## No. 13,523.

### McGlone, Manager of Revenue *v*. First Baptist Church of Denver.
### (50 P. [2d] 547)

Decided October 7, 1935.

Mr. James D. Parriott, Mr. Frank L. Hays, for plaintiff in error.

Mr. WILLIAM R. EATON, Mr. HENRY B. BABB, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THIS is an action by a religious organization against tax officials to remove certain property from the tax rolls and have it declared exempt from taxation under the existing Constitution and laws of Colorado. Judgment below was for plaintiff, to review which defendant brings the case here on error. The parties will be herein designated as plaintiff and defendant as in the trial court.

The plaintiff is a corporation organized and existing under the laws of Colorado since the 22nd day of May, 1873. Its objects and purposes are set forth in its articles of incorporation to be, "The support of the gospel and maintenance of religious worship in accordance with the faith, form and usages of the Baptist Church of the United States of America; to maintain, hold and keep in repair a house of public worship * * *." The corporation is the owner of a church building located between 17th and 18th streets on Stout street in the city of Denver, which, at the time of bringing the action, it was using as a place of worship, but which it then deemed inadequate to carry out its objects and purposes. For this reason the board of trustees had acquired property located at the southwest corner of 14th avenue and Grant street in the city of Denver for a purchase price of $25,000—which the church had fully paid—with the view of erecting thereon a suitable and adequate church building. When this property was acquired a large residence building was located thereon, and a number of small garages were constructed which the plaintiff rented with the residence. So long as the same were paying a revenue, no objection to taxation or claim for exemption was made and plaintiff paid taxes on the lots and improve-

ments thereon. In the early part of 1931, the church determined, and by resolutions duly passed, expressed its intention to proceed at once in a building campaign for the erection of a new church building. Pursuant to this determination plaintiff accumulated a building fund of approximately $16,000, and in May of 1932, entered into a contract which shortly thereafter was carried out, to raze the residence and garages on the lots on which it proposed to build, to prepare them for the immediate construction of its proposed church edifice. At about this time the pastor of the church, due to health conditions in his family, was forced to retire from the pastorate of the church and it was left without a leader. This, together with generally depressed business conditions, prevented further immediate action being taken toward the erection of a church building and in the spring of 1933, when the taxes of 1933 became a lien on its property, plaintiff filed this action, praying that the property be removed from the assessment roll and tax list of the City and County of Denver, that all taxes theretofore assessed and levied be set aside and that the property be declared to be exempt from taxation for the year 1933, and forever after, and praying further that the taxing officials be restrained from collecting any taxes against such property. The trial court found that the lots with the improvements thereon and the entire proceeds therefrom had been used exclusively for carrying on and conducting plaintiff's religious activities, and that the demolishment of said buildings on said property was the commencement of the construction of plaintiff's new house of public worship, and that, "Since the commencement of said use of said lots for said purposes, said plaintiff has, in good faith, continued in the intention and contemplation of following out said use thereof by further construction of its new House of Public Worship, and that said described property and all improvements thereon are and were wholly exempt from all assessments, levies and impositions of taxes assessed, levied and imposed, and to be assessed,

levied and imposed thereon, in accordance with the provisions of the Constitution and statutes and the decisions of the Supreme Court of the State of Colorado with reference to such matters, for the years 1933, 1934 and 1935; and that said assessments, levies and imposition of taxes for said year 1933, is and is hereby declared to be, null and void and of no force or effect whatever." The trial court further ordered that the taxing officials be restrained from levying or collecting any taxes on said property for the years 1933, 1934 and 1935.

All of defendant's assignments of error may be considered under the proposition of whether or not the property is exempt under section 5 of article X of the Colorado Constitution, which is as follows: "Lots, with the buildings thereon, if said buildings are used solely and exclusively for religious worship, for schools, or for strictly charitable purposes * * * shall be exempt from taxation, unless otherwise provided by general law."

Section 7198, C. L. 1921, enacted pursuant to the foregoing section of the Colorado Constitution, and in almost the identical words of that section, is as follows: "Second. Lots with the buildings thereon, if said buildings are used exclusively for religious worship. * * * Fourth. Lots with the buildings thereon, if said buildings are used for strictly charitable purposes."

There are two distinct lines of authorities on the construction of tax exemption provisions in constitutions and statutes; one line construing them strictly, the other giving them a liberal construction. In a recent case this court said: "The courts of some of the states interpret such provisions strictly and others liberally. Our own decisions unquestionably are liberal. * * * (Citing cases). The argument of counsel for the defendants in error, which, in substance, is a plea for the adoption by this court of the strict rule of construction, which, if approved, would be contrary to our previous decisions on this important subject, does not meet with our approval, and we are not disposed to depart from such decisions

upon the controlling question involved in this case." *El Jebel Ass'n v. McGlone,* 93 Colo. 334, 26 P. (2d) 108. This rule of liberal construction was again approved in *Kemp v. Pillar of Fire,* 94 Colo. 41, 27 P. (2d) 1036.

In a very recent case, this court used the following language: "With the wisdom or unwisdom of provisions establishing tax exemptions, this court has, of course, nothing to do. It must deal with constitutional and statutory provisions as it finds them." *Colorado Tax Commission v. Denver Bible Institute,* 94 Colo. 402, 30 P. (2d) 870. In dealing with such constitutional and statutory provisions, this court must take into consideration its former decisions construing them, and so long as such decisions stand as the pronouncements of this court, cases arising under the above quoted sections of our Constitution and statutes should be determined in accordance with the rules and principles of law laid down in those cases.

It will be observed that under the constitutional provision with reference to exemptions, it is expressly provided that the property therein exempted, "shall be exempt from taxation, unless otherwise provided by general law," thus leaving it absolutely within the power of the legislature to limit, modify or abolish the exemptions provided by the Constitution. The statute with reference to exemptions is practically in the same words as the constitutional provision. It has not been materially changed over a course of many years, from which fact it seems logical to conclude that the people of the state have approved the liberal rule of construction adopted by the courts; otherwise they would have taken action through the legislature to further limit the conditions under which property of religious, charitable and educational institutions may be exempt.

In the case of *El Jebel Ass'n v. McGlone, supra,* to which reference will be made as the Shrine case, there was on the lots involved a foundation that had cost $50,000, which we held was sufficient, under our Consti-

tution and statutes, to constitute a building. It will be noted that both the Constitution and statute contain the same wording as to the conditions rendering lots exempt from taxation, namely, "With the buildings thereon" (that is, *if there are buildings on the lots*), and "if said buildings are used solely and exclusively for religious worship * * * or for strictly charitable purposes." These two conditions unquestionably are coordinate. In the Shrine case we held that a foundation is a building. There was no contention in that case, and could be none in reason, that the foundation, which is all there was on the lot, was used for strictly charitable purposes. Indeed, there was no contention that it was used at all. The rule of construction that we applied in the Shrine case was substantially this: When an admittedly charitable institution undertakes in good faith to extend its plant and facilities for charitable work and evidences this fact by the expenditure of money and the doing of work as part of a program looking toward the erection of a building to be used when completed for charitable purposes, this is within the spirit of the constitutional and statutory tax exemption provisions, and real property acquired and held in pursuance of such program so evidenced is exempt, while the program in good faith is in process of being carried out. In effect we held that the requirements of the Constitution and statutes are met if there is a bona fide continuing intention to construct a building to be devoted to the specified uses, evidenced by work and the expenditure of money toward that end.

In the instant case a lot was purchased for $25,000 by an admittedly religious organization that could have no use for the property except for an expansion of its religious activities. It formally adopted a building program and raised about $16,000 toward carrying out such program. It began work on the lots by removing a nineteen-room house and nine or ten garages located thereon and had completed this work only five months before the

assessment of which complaint was made, work that was a prerequisite to building a church and a part of the building program, just as putting in a foundation was a part of the Shrine program. That there was a bona fide intention to construct a building on the lot is true in this case as it was in the Shrine case. The church organization having no objectives other than religious, charitable and educational, under the rule we have applied, is entitled to the benefit of the presumption that when the building is completed it will be used exclusively for religious purposes, just as the Shrine is entitled to the benefit of the presumption that its prospective use of its building, when completed, will be for charitable purposes. Both programs were stopped by the same depression of which this court in the Shrine case, supra, said: ''This court may take judicial notice of the fact that many similar efforts towards the erection of buildings in this country have been undertaken, but not completed, because of the world-wide depression. The lots in question were purchased by the shrine association and a portion of the building which it proposes to erect has been done at the cost of $50,000 and the purpose of the Shrine is to complete the same for a benevolent, charitable use as soon as business conditions improve.''

The trial court, in the exercise of its discretion, did not permanently enjoin the levying and collection of taxes on the lots in question, but extended its injunction only to the levying and collecting of taxes for the years 1933, 1934 and 1935. It leaves to future determination by the courts the question of whether plaintiff on the expiration of that time shall still in good faith have the intention to carry out its plan and whether it shall then be making a continuous and reasonable effort toward completing its building program. The trial court rightly applied the principles of law, which we have heretofore announced, to the instant case in holding the lots exempt; and its limitation of the time that the injunction against

the tax-collecting officials should remain in force to three years, did not exceed a reasonable discretion.

The judgment is affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE HOLLAND, dissenting.

I am unable, from any view of the record in this case, to concur in the majority opinion. According to my view the opinion in the present case announces in effect the doctrine that all real estate owned by a religious corporation is exempt from taxation.

No provision of our Constitution is more clearly worded, and the meaning less in doubt than section 5, article X, which is as follows: "Lots, with the buildings thereon, if said buildings are used solely and exclusively for religious worship, * * * shall be exempt from taxation, unless otherwise provided by general law." Section 7198, C. L. 1921, concerning exemptions, is equally clear: "Second. Lots with the buildings thereon, if said buildings are used exclusively for religious worship."

As to classification as vacant or improved property, these lots are admittedly vacant. No actual construction work has ever been commenced. The removal of the old buildings thereon was completed in November, 1932, and the building project has been dormant since that time. Counsel for the church contends that the work of razing the old buildings was the beginning of building operations and the majority opinion has adopted that view. No doubt the church authorities in 1931, in good faith contemplated and planned a building program, but that plan could be abandoned at any time and they may never build on these lots. The erection of a building, or part of a building, such as would bring this property within the meaning of the exemption provision of the Constitution and statute, as well as the rule announced by this

court, is only a possibility. Exemptions from taxes are neither based, nor allowed, on possibilities.

In determining this case, we have no former decision to follow, notwithstanding the approval of former decisions cited in the majority opinion. There is a clear distinction between the facts here presented and those upon which our former decisions are based. The lots here involved are not a part of a unit of lands or lots devoted to religious purposes, neither is there a partly constructed building thereon; nor is there revenue received therefrom that could be said to be used in connection with religious work or purposes. It is true, as counsel for the church insists and prior decisions of this court hold, that in matters of tax exemption of religious and charitable institutions, a rule of liberal construction has been adopted; but there is no reason for an extension of the rule to embrace the simple facts presented in this case. Can liberal construction go so far as to bring into physical existence a building, or some part of a building on a lot, when admittedly there is none? The Constitution clearly says, "If said buildings are used solely and exclusively for religious worship," and does not say that the intention to construct a building to be used for religious worship exempts the real estate upon which it is to be located, from taxation. The mandate of the Constitution, subject to no exceptions, is that buildings *be used* for a designated purpose before the exemption applies. Counsel for the church present a claim founded solely upon good intentions. An expression of intention to do the thing necessary to place property in the exempt class, that is, build thereon, only emphasizes the fact that the act has not already been performed. If there was even a doubt as to the meaning of the wording of the Constitution and statute applicable to this case and it became necessary to indulge a presumption relative to the meaning of the words employed, the presumption is always in favor of the taxing power. 61 C. J. 391, section 395.

If by any stretch of the imagination, the injunction of the trial court resulting in exempting the property in question from the taxes of 1933, can be deemed proper, there surely is no justification for the extension of that injunction to cover the years 1934 and 1935. One of two things was required, the entry of a decree as prayed, exempting the property from all future taxation and ordering same stricken from the assessment roll, or the enjoining the collection of the tax that had accrued during the time that it is now contended the proposed building program was in progress. But enjoining the collection for the future years of 1934 and 1935 only, was an acknowledgment of the correctness of the reasoning of this dissenting opinion to the effect that the program could be abandoned or other contingencies arise, in which event the property thereafter would be subject to taxation.

There is neither a single fact, nor any contention, that brings this case within the rule as applied in any former decision of this court, and to the opinion of those who take a different view, I respectfully dissent.

I am authorized to state that Mr. Chief Justice Butler concurs in this dissent.