# April Term, 1937

No. 13,918.

CREEL, TREASURER OF PUEBLO COUNTY *v.* PUEBLO MASONIC
BUILDING ASSOCIATION.

(68 P. [2d] 23)

Decided April 12, 1937. Rehearing denied May 10, 1937.

Mr. Riley R. Cloud, Mr. Paul P. Prosser, Attorney General, Mr. Charles Roach, First Assistant, Mr. Pierpont Fuller, Assistant, for plaintiff in error.

Messrs. Phelps & Gobin, for defendant in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The Pueblo Masonic Building Association herein designated as the association, or plaintiff, brought an action in the district court against J. E. Creel in his capacity as county treasurer of Pueblo county, herein mentioned as defendant, seeking to enjoin him from selling certain property of the association for nonpayment of taxes, and to remove the same from the tax roll as exempt from taxation. To reverse a judgment for plaintiff granting the relief prayed defendant prosecutes this writ of error.

All of the facts were presented by stipulation from which the following appears: That the association is a purely charitable organization; that it owns a five story office building, with full basement located on the main business street in the heart of the business district of Pueblo; that the ground floor and basement are rented for store purposes; that the second floor is rented to the public generally and occupied as offices; that the third floor is rented for a business college; that on the fourth floor is a room used as a dining room by the various Masonic organizations interested in the association, and the offices of the secretary of the association also are located on this floor; that the fifth floor is used for lodge room purposes; that all net revenues so far derived have been applied to the retiring of preferred stock of the association sold to finance the purchase of the building; and that all such revenues, when the building is paid for,

will be used by the various Masonic bodies interested in the association for their maintenance and for charitable objects and purposes.

Briefly stated, the situation presents the question whether an admittedly charitable organization deriving revenue, not merely incidental to the use and management of property otherwise used for its charitable purposes, but from property used for the sole purpose of producing revenue to be used in carrying out such purposes, is entitled to have property so used exempted from taxation.

 The answer must be found in our constitutional and statutory provisions with reference to exemptions, and since both parties to the action vigorously maintain that the principles announced in opinions of this court in decided cases are determinative of the issues herein presented, in their favor, it is proper that such opinions be reviewed in order that the principles on which they rest may be specifically and clearly announced and the present case included within, or excluded from, the established rules.

The pertinent constitutional provision is section 5 of article X of the Constitution which is as follows: "Lots, with the buildings thereon, if said buildings are used solely and exclusively for religious worship, for schools, or for strictly charitable purposes, also cemeteries not used or held for private or corporate profit, shall be exempt from taxation, unless otherwise provided by general law." The statutory provision enacted pursuant thereto is section 7198, C. L. 1921, which reads: "The following classes of property shall be exempt from general taxation, to-wit: * * * Fourth. Lots with the buildings thereon, if said buildings are used for strictly charitable purposes."

The question as here presented has never been before the court and has never been determined. Seventeen Colorado decisions are cited in the briefs of counsel for the respective parties, some of which are readily distinguished as having no application to the case at bar;

others require a critical analysis to disclose their inapplicability.

Among those readily distinguishable are *County Commissioners v. Colorado Seminary*, 12 Colo. 497, 21 Pac. 490; *Colorado Seminary v. Board of Commissioners*, 30 Colo. 507, 71 Pac. 410; and *City and County of Denver v. Colorado Seminary*, 96 Colo. 109, 41 P. (2d) 1109. All of these cases deal with the construction of a provision in the charter granted by the legislative assembly of the Territory of Colorado to the Colorado Seminary March 5, 1864, and prior to the adoption of the state Constitution. Section 5 of the act provides: "Such property as may be necessary for carrying out the design of the Seminary in the best manner, while used exclusively for such purpose, shall be free from all taxation." Ter. Laws, '64, p. 209. The matter before the court for determination in the mentioned cases is well stated in *County Commissioners v. Colorado Seminary, supra,* in these words: "The Colorado Seminary having been organized as a corporation, and having proceeded in the performance of its appointed work under the special charter granted by the territorial legislature, the provision of this charter allowing exemptions from taxation became a part of the contract existing between it and the state. This contract could not be impaired by subsequent legislation, constitutional or statutory." The mentioned contract provision there under consideration is not in the words of section 5, article X of the Constitution, supra; it is broader in its scope than the constitutional provision and the cases construing it are not precedents as to the construction to be placed on the more restrictive constitutional provision relating to property used for charitable purposes.

*Pitcher v. Miss Wolcott School Ass'n*, 63 Colo. 294, 165 Pac. 608, and *Bishop and Chapter v. Treasurer*, 37 Colo. 378, 86 Pac. 1021, known as the Oakes Home case, did not concern the use of property. The first involved the question as to whether a private school conducted for profit which "owns several buildings, and the grounds upon

which they are located, *which are admitted to be used for school purposes"* (Italics ours), was within the meaning of the term "schools" as used in the Constitution and statutes. The court held that it was. In the Oakes Home case the question presented was merely whether an institution for the care of tuberculars erected by donations and admitting some free patients, but the greater number of whom were cared for on a cost basis, was carrying out a charitable objective. The court also there held that it was. There was no suggestion that the property claimed as exempt was not used directly in caring for the patients of the institution.

In the case of *City and County of Denver v. Gunter,* 63 Colo. 69, 163 Pac. 1118, known as the Clayton College case, the members of the court were evenly divided; consequently there was a statutory affirmance under '35 C. S. A. Code, section 439. The determination of this case did not depend on the constitutional provision here involved, but on section 4, article X of the Constitution exempting the property of towns and cities from taxation.

In *Denver Turnverein v. McGlone,* 91 Colo. 473, 15 P. (2d) 709, property was held exempt from taxation on the ground that the activities of the plaintiff, consisting of teaching physical culture, constituted the conducting of an educational institution. No issue was there raised that the property in suit was not directly used in carrying out the objectives of the organization. The question was merely whether an organization carrying on such activities was a "school" within the meaning of that term as used in the Constitution. The court held that it was.

Our court, in the case of *Commissioners v. D. & R. G. Ass'n,* 70 Colo. 592, 203 Pac. 850, denied the claim of exemption made by a relief association, the membership of which was involuntary and included all officers and regular employees of a railroad company, the organization being supported by monthly dues paid by its members and providing for hospital service to them only. It was not contended that the property sought to be held

exempt was not used directly in carrying out the above purposes. The case was determined on the proposition that the purposes of the organization were not charitable. The use therefore, for purposes not charitable, of course, gave no right of exemption. In the case at bar the purposes of the plaintiff organization are stipulated to be charitable and the issue is whether the property is used for such purposes. In *Grisard v. Cemetery Ass'n,* 92 Colo. 289, 19 P. (2d) 766, the question involved was whether a cemetery was exempt from taxation. Section 5, article 10 of the Constitution, exempts cemeteries ''not used or held for private or corporate profit.'' The issue in that case was determined by a jury on conflicting evidence and this court held it was bound by the jury's finding. The case is not a precedent for the determination of any issue involved in the instant case.

*El Jebel Shrine Ass'n v. McGlone,* 93 Colo. 334, 26 P. (2d) 108, and *McGlone v. Baptist Church,* 97 Colo. 427, 50 P. (2d) 547, involved claims for exemptions; the first by an admittedly charitable association and the second by an organization unquestionably religious. The facts in the two cases were similar. Both organizations had in process a building program temporarily halted by lack of funds and each intending in good faith to continue its program as soon as economic conditions would permit. Again there was no question as to the purposes for which the buildings and lots would be used directly when the buildings were completed. The rule applied in these cases in upholding the exemption claims is stated in *McGlone v. Baptist Church, supra,* as follows: ''When an admittedly charitable institution undertakes in good faith to extend its plant and facilities for charitable work and evidences this fact by the expenditure of money and the doing of work as part of a program looking toward the erection of a building to be used when completed for charitable purposes, this is within the spirit of the constitutional and statutory tax exemption provisions, and real property acquired and held in pursuance of such

program so evidenced is exempt, while the program in good faith is in process of being carried out. In effect we held that the requirements of the Constitution and statutes are met if there is a bona fide continuing intention to construct a building to be devoted to the specified uses, evidenced by work and the expenditure of money toward that end."

In *Horton v. Fountain Valley School*, 98 Colo. 480, 56 P. (2d) 933, a judgment of the lower court denying an exemption of approximately fourteen hundred acres of prairie land was reversed. The school was conducted as a "ranch" school. The land was used by the students principally as "riding territory." The students were confined in such activities to the school property. It clearly appeared that the use made of the open land was direct though not extensive. We held that the use was legitimate for a school of such character in carrying out its objectives and that it was the character of the use and not its extent which determined whether the property was or was not exempt.

The cases that require closer scrutiny and yet are distinguishable from the case at bar are *Bishop and Chapter v. Treasurer of Arapahoe Co.*, 29 Colo. 143, 68 Pac. 272; *Horton v. Colorado Springs Society*, 64 Colo. 529, 173 Pac. 61; *Board of Commissioners v. San Luis Valley Masonic Ass'n*, 80 Colo. 183, 250 Pac. 147; *Kemp v. Pillar of Fire*, 94 Colo. 41, 27 P. (2d) 1036, and *Colorado Tax Commission v. Denver Bible Institute*, 94 Colo. 402, 30 P. (2d) 870.

The case of *Bishop and Chapter v. Treasurer, supra,* known as the Matthews Hall case, involved a situation in which a building and lots had been donated for a theological school on condition that the bishop of the Diocese should be the chief instructor and reside in the building. Such a school was conducted with half a dozen students and the Bishop and his family used the buildings as a residence. The students attended, lectures were delivered and instruction given there. None of the instruc-

tors were paid and the Bishop devoted a considerable part of his time to his duties as bishop of the diocese. The property was held to be exempt. In that opinion the court said: "So that a use incident to the main purpose for which the property is held is not one which falls within the prohibitions contemplated by the law. Tested by these considerations, the occupation of the premises by the bishop and his family does not render the property subject to taxation. He is there as an instructor; a school cannot be conducted without teachers; and the mere fact that the bishop resides on the premises with his family is but an incident to the main purpose which requires his presence. * * * He may devote a part of his time to the discharge of his duties as bishop, but it does not appear that in so doing the property is in the slightest degree alienated from its use as a theological school. Neither does it appear that thereby he is in any manner abusing the privileges conferred by the law, or attempting to shield the property from the payment of taxes by asserting a use which is not bona fide. Incidentally, he may derive some benefit from occupying the premises; so with any other instructor; but where, as in this instance, the chief use of the hall is for educational purposes, the discharge of his duties as bishop—closely allied as they are with his duties as instructor, not interfering with the use of the premises as a school—does not render the property subject to taxation. * * * In determining these questions it must be borne in mind that whether in any given case property is or is not exempt, must be determined by considering all of the facts and circumstances, and the intentions and purposes of those in charge of the institution to which the property belongs respecting the use and occupation of such property."

*Horton v. Colorado Springs Society, supra,* involved a situation in which a building held for the use of several Masonic bodies contained a club room, a ballroom and dining room, and a news and cigar stand in the club room maintained for the convenience of the members, but which

had never paid any revenue. The ballroom and dining room were sometimes permitted to be used for social functions which nonmembers attended. Again the court applied the rule announced in the Matthews Hall case, holding that such use was merely incidental to the principal objectives of the society and that it did not deprive an otherwise charitable organization of its right of exemption.

*Board of Commissioners v. San Luis Valley Masonic Ass'n, supra,* known as the Masonic Park case was based on the following facts: A number of associated lodges owned a quarter section of land on which they maintained an "association building," a "caretakers house," and another building known as the "Order of the Eastern Star building." Leasehold interests for certain lots were sold for $25 each to individual Masons entitling them to build summer cottages on the lots. Such improvements were the property of the individual members. Monies received from such leasehold interests were used for Masonic purposes. The grounds and buildings were used exclusively as a fraternal, pleasure, recreation and health resort for Masons and their families from any part of the world. The court held that the use was a charitable use and that the mere incident of selling some leasehold interests in lots was not sufficient to take from the property its exempt character. The rule again applied was that mere incidental income from property clearly not maintained for the principal objective of producing income did not take it out of the exempt class.

*Kemp v. Pillar of Fire, supra,* is strongly relied upon as authority supporting the association's contention in the present case. There a partially self-sustaining religious school with a forty acre campus, admittedly exempt, owned two hundred acres of land nearby utilized for raising fruit and vegetables used by the students and instructors of the school, and feed and grain for chickens and animals also kept for the use of the school. A part of the land was leased to tenants for a small cash rental,

and a small amount of surplus produce was sold, the proceeds of which were used for purposes of the school. There were 73 students, but of these only 12 paid a small portion of their board and tuition. This case leans in the direction in which plaintiffs ask us to go in holding its property exempt, but we think not so far as necessary to sustain plaintiff's position. In this case the court said: ''The entire property constitutes a unit. *It is reasonably necessary to effect the objects of the institution,* and it is used solely for that purpose.'' (Italics ours.) In this case and in the later case of *Colorado Tax Commission v. Denver Bible Institute, supra,* in which the facts were similar, but did not involve the renting of any part of the land or the sale of any produce from it, the court in effect held that what is an incidental use depends on the particular facts and circumstances of each case. We think that such is the only safe rule to follow, and it was stated in the Matthews Hall case in these words: ''So that a use incident to the main purpose for which the property is held is not one which falls within the prohibitions contemplated by the law.''

Many situations arise in the law in which a flexible standard must be adopted. A familiar instance is found in negligence cases. Ordinary care under any given circumstances is measured by a flexible standard. It is assumed to be such action or nonaction as the particular circumstances would call forth from an hypothetical person possessing the intelligence common to the generality of mankind to foresee the consequences of action or inaction under the circumstances, and the normal desire of the generality of mankind not to suffer injury to themselves or to inflict injury upon others. Many cases are presented in which the circumstances and what was or was not done so clearly appeared, that the courts had to say as a matter of law that the acts or omissions did or did not constitute negligence. Similar situations will be presented when the question of what is or is not an incidental use arises in connection with ex-

emption claims. In the instant case the situation is presented of a five-story building, three floors of which are used for rental purposes and which are not directly or even indirectly used by the association for any other purpose than that of producing revenue, the same purpose for which buildings are owned and maintained by private persons and corporations. We think it so clearly appears that such does not present a case of mere incidental use or incidental income from the property otherwise "reasonably necessary to effect the objects of the institution"—to use again the words of the court in the Pillar of Fire case—as to require us to so find as a matter of law. Unquestionably borderline cases like the Pillar of Fire case, in which the judgment was affirmed, will arise and call for the determination by a fact finding tribunal of the question of whether the use and income derived is merely incidental to the otherwise reasonably necessary use of the property in carrying into effect the objectives of the charitable or educational institution concerned. The case before us is not of such character.

Since the claim is for an exemption from taxation of the entire building, we do not consider or pass upon the suggestion of counsel for plaintiff in error that there may be a separate valuation and assessment of that part used for revenue producing purposes. We reserve that question for determination when and if it shall arise in litigation before us.

The judgment is reversed.