## No. 14,103.

HANAGAN ET AL. *v.* GRAND LODGE, KNIGHTS OF PYTHIAS, DOMAIN OF COLORADO.

(80 P. [2d] 328)

Decided January 10, 1938.   On rehearing original opinion adhered to May 2, 1938.

Mr. CHARLES E. SABIN, Mr. CLYDE T. DAVIS, for plaintiffs in error.

Mr. D. A. MALONEY, Messrs. PHELPS & GOBIN, for defendant in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

To a judgment of the district court in favor of the plaintiff, the Grand Lodge, Knights of Pythias of the Domain of Colorado, a corporation, exempting certain property of the organization from taxation, and perpetually enjoining the taxing authorities of Otero county from assessing it, the taxing authorities prosecute a writ of error.

It appears from the record that in 1927 the Mennonite Board of Missions and Charities owned a hospital and sanitarium consisting of a three-story building, a large residence and out buildings located on one hundred sixty acres of land in Otero county, Colorado, which it was about to abandon. The board was contemplating the construction of a hospital in the city of La Junta, but was unwilling to construct the hospital without first disposing of the sanitarium property which it owned. The citizens of the city of La Junta, acting through the chamber of commerce, were desirous of obtaining a purchaser for this property, and to that end opened negotiations with the Grand Lodge, Knights of Pythias, defendant in error here, to purchase the same to be used as a home for its infirm and indigent members. A price of $110,000 was agreed upon with the Mennonite board. Through subscriptions by the citizens of La Junta, $60,000 was raised on the $110,000 purchase price, and paid to the Mennonite board. The Grand Lodge then purchased the sanitarium property for $50,000, the amount of the unpaid balance of the purchase price agreed upon by the citizens of La Junta acting through its chamber of commerce and the Mennonite board. The Grand Lodge purchased the property to be used as a Pythian home for aged and infirm members of the lodge. $30,000 of the $50,000 purchase price had been paid by the lodge at the time suit was instituted; $4,000 of this amount being paid during the preceding four years, of which $500 was paid about a week before the trial of this case was commenced in the district

court. The Grand Lodge established the Colorado Pythian Home and Sanitarium, and created a board to manage and control the institution, levied an assessment of $15 on each Colorado member, and set up rules and regulations to govern the board so created.

The sanitarium proper consists of a three-story building, and the residence and out buildings are located on forty-five acres of unirrigated land included in the one hundred sixty acres purchased. It was stipulated that neither the buildings nor the forty-five acres had ever been assessed or taxed by the authorities of Otero county. The 115 acres of irrigated land, it was stipulated, was and had been rented for approximately $14 an acre, and the proceeds used to pay interest on the encumbrance and to retire the indebtedness. An action was brought by the lodge to enjoin the taxing authorities from assessing and collecting taxes on any part of the one hundred sixty acres and to recover certain taxes paid under protest. It was stipulated by the parties that the Grand Lodge was a charitable organization, and ''That the property herein in dispute was acquired for the use above described, and it is the intent and purpose of the plaintiff to use and maintain the property for the purpose for which it was purchased, but due to a decline in membership and receipts the plaintiff is unable at this time to operate said property as a home, and there has at various times between members of the plaintiff's lodge been discussions concerning the advisability of selling said property, because of said decline of membership and receipts, but no conclusion has been reached to sell.''

While the cause was pending in the district court we handed down the decision in *McGlone v. Baptist Church*, 97 Colo. 427, 50 P. (2d) 547. Whereupon the taxing authorities petitioned the court to reopen the case. The court granted the petition and entered an order in which it was recited that: ''It was stipulated and agreed by the parties hereto that the intention of the defendants in seeking to reopen this cause for the introduction of further

evidence, is that evidence may be introduced solely upon the question of whether or not a bona fide continuing intention now exists on the part of the plaintiff in this case to use said property for a strictly charitable purpose."

The testimony introduced after the cause was reopened was to the effect that the lodge membership in Colorado since the purchase of the property had greatly decreased in numbers; that all of the assessments levied against the members had not been paid, and that although some members had paid in full, some were still making payments on their assessments; that no change had been made in the declared objectives of the Grand Lodge to operate the property as a home for its infirm and indigent members; that the question of selling the property had been discussed but that no action had been taken. It appeared that the sanitarium board created and established by the lodge still was functioning and making payments on the property as fast as funds were available.

We are of the opinion that the stipulations and evidence before the court were sufficient to warrant its finding that the lodge had a bona fide continuing intention to establish and operate the institution as a home for its aged and indigent members. The situation presented by the evidence differs in no material respect from that disclosed in the case of *El Jebel Ass'n v. McGlone,* 93 Colo. 334, 26 P. (2d) 108, and *McGlone v. Baptist Church, supra.* For this reason we think the taxing authorities properly refrained from assessing and collecting taxes on the buildings and the forty-five acres of unirrigated land on which the buildings were located. Upon no other theory can they justify their action exempting any part of the property.

The determination that there was a bona fide continuing intention to use the property for charitable purposes does not, however, completely dispose of the case under the assignments of error of the taxing authorities. Their second assignment is: "That the court erred in determining that the defendant in error used the property described in the complaint, and which it sought to have

exempted herein, solely and exclusively for religious worship, for schools, or for strictly charitable purposes, within the meaning of Article Ten, Section Five of the Constitution of the State of Colorado."

The record does not disclose that the use of the irrigated land for rental purposes, and the revenues therefrom for payment of the indebtedness on the property, is or can be "a case of mere incidental use or incidental income from the property otherwise 'reasonably necessary to effect the objects of the institution.' " *Creel v. Masonic Ass'n,* 100 Colo. 281, 68 P. (2d) 23. In the Creel case, and in the case of *Hanagan v. Rocky Ford Ass'n,* 101 Colo. 545, 75 P. (2d) 780, decided this day, we have held that a part of a building horizontally adjacent to a portion of the building used exclusively for charitable purposes, together with a proportionate part of the lot on which the building stands is not exempt from taxation when used solely for revenue producing purposes. The principle therein applied requires a holding in this case that the property laterally adjacent to other property used strictly for charitable purposes be subject to taxation when such property is used solely for producing revenue, such revenue not being produced merely incidentally from property which otherwise is necessary to effect the objects of the organization.

The judgment of the trial court therefore is reversed, and the cause remanded with instructions that further proceedings, if any, shall not be inconsistent with the views herein expressed.

MR. JUSTICE HILLIARD, MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.

MR. JUSTICE BOUCK, dissenting.

The majority opinion herein summarily changes the attitude which this court had steadily kept for over half a century toward tax exemptions established by our Constitution and our statutes in favor of religious, charitable

and educational institutions. An unbroken line of our decisions is discarded—not expressly, but by implication —and the fundamental principle underlying such exemptions is entirely overlooked. Interpretations which under universally accepted rules had become imbedded in the constitutional and statutory definitions and terms are suddenly cast aside.

In *McGlone v. Baptist Church*, 97 Colo. 427, 430, 50 P. (2d) 547, 548, Mr. Justice Young, the spokesman of the four justices constituting the majority in the case at bar, wrote the opinion which, ably marshaling the law as existing up to that time, sustained the claim of exemption there asserted. I hardly need do more than quote from his opinion, and refer for further argument to the opinion itself. A careful perusal of our former decisions there approved and relied upon calls for sustaining the exemption claimed here.

In the present case I call attention to the fact that the district court duly made its findings from evidence before it, and on this evidence, in the light of all our previous decisions, properly concluded that the exemption was lawfully claimed. No reason is apparent for not accepting the findings of the trial court as the binding conclusions of a fact-finding body. It was for that court to ascertain whether there was, in good faith, a continuing intention to execute the highly benevolent plan of the organization. This is the sole issue on which the plaintiffs in error requested and obtained a reopening of the case. Having thus framed the issue, they are bound by the adverse decision thereon. We have no right to usurp these fact-finding functions of the trial court in relation to issues which constitute the theory whereon the case was tried below.

Now to quote from *McGlone v. Baptist Church, supra:*

"There are two distinct lines of authorities on the construction of tax exemption provisions in constitutions and statutes; one line construing them strictly, the other giving them a liberal construction. In a recent case this court

said: 'The courts of some of the states interpret such provisions strictly and others liberally. Our own decisions unquestionably are liberal * * * (Citing cases). The argument of counsel for the defendants in error, which, in substance, is a plea for the adoption by this court of the strict rule of construction, which, if approved, would be contrary to our previous decisions on this important subject, does not meet with our approval, and we are not disposed to depart from such decisions upon the controlling question involved in this case.' *El Jebel Ass'n v. McGlone,* 93 Colo. 334, 26 P. (2d) 108. This rule of liberal construction was again approved in *Kemp v. Pillar of Fire,* 94 Colo. 41, 27 P. (2d) 1036.

"In a very recent case, this court used the following language: 'With the wisdom or unwisdom of provisions establishing tax exemptions, this court has, of course, nothing to do. It must deal with constitutional and statutory provisions as it finds them.' *Colorado Tax Commission v. Denver Bible Institute,* 94 Colo. 402, 30 P. (2d) 870. In dealing with such constitutional and statutory provisions, this court must take into consideration its former decisions construing them, and so long as such decisions stand as the pronouncements of this court, cases arising under the above quoted sections of our Constitution and statutes should be determined in accordance with the rules and principles of law laid down in those cases.

"It will be observed that under the constitutional provision with reference to exemptions, it is expressly provided that the property therein exempted, 'shall be exempt from taxation, unless otherwise provided by general law,' thus leaving it absolutely within the power of the legislature to limit, modify or abolish the exemptions provided by the Constitution. The statute with reference to exemptions is practically in the same words as the constitutional provision. It has not been materially changed over a course of many years, from which fact it seems logical to conclude that the people of the state have approved the liberal rule of construction adopted by the

courts; otherwise they would have taken action through the legislature to further limit the conditions under which property of religious, charitable and educational institutions may be exempt.''

If the doctrines thus clearly laid down in the foregoing quotations are, as they should be, applied in the case at bar, the judgment below must be affirmed in its entirety.

For the reasons stated I respectfully dissent.

MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND concur in this opinion.