COLORADO COURT OF APPEALS
 2016 COA 02

 
 

 Court of Appeals No. 14CA1767
Colorado Board of Assessment Appeals
Case Nos. 44667, 44670, 44672, 44674, 44677, 44681, 44682, 44683, 53058, 53173, 53475 & 53476

 Grand County Board of Commissioners and Larimer County Board of Commissioners,
 Petitioners-Appellants,
 v.
 Colorado Property Tax Administrator,
 Respondent-Appellee,
 and
 YMCA of the Rockies,
 Intervenor-Appellee,
 and
 Board of Assessment Appeals,
 Appellee.

 ORDER AFFIRMED
 Division I
Opinion by JUDGE HARRIS
Taubman and J. Jones, JJ., concur
 Announced January 14, 2016

 Alan N. Hassler, County Attorney, Robert Franek, Assistant County Attorney, Hot Sulphur Springs, Colorado, for Petitioner-Appellant Grand County Board of Commissioners 
 George H. Hass, County Attorney, Fort Collins, Colorado, for Petitioner-Appellant Larimer County Board of Commissioners
 Cynthia H. Coffman, Attorney General, Robert H. Dodd, Senior Assistant Attorney General, Grant T. Sullivan, Assistant Solicitor General, Denver, Colorado, for Respondent-Appellee Colorado Property Tax Administrator
 Bryan Cave LLP, Stuart J. Lark, Brent E. Rychener, Richard R. Young, Colorado Springs, Colorado, for Intervenor-Appellee YMCA of the Rockies
 Cynthia H. Coffman, Attorney General, Emmy A. Langley, Assistant Attorney General, Denver, Colorado, for Appellee Board of Assessment Appeals
 
 
 ¶1         This is the second appeal to this court of an order of the Board of Assessment Appeals (the Board) in a property tax exemption case. In the first appeal, the Young Men’s Christian Association of the Rockies (YMCA) appealed the Board’s orders denying its requests for religious purposes and charitable use tax exemptions. A division of this court reversed, concluding that the Board had applied an incorrect legal standard. Larimer Cty. Bd. of Comm’rs v. Colo. Prop. Tax Adm’r, 2013 COA 49M (cert. denied, Dec. 9, 2013) (YMCA I).
 ¶2         On remand, the Board applied the standard articulated by the YMCA I division, and it determined that the YMCA was entitled to the religious purposes exemption.[1] The boards of county commissioners for the counties in which the YMCA’s properties are located appeal, arguing that the YMCA I division misconstrued the law and directed the Board to apply an incorrect legal standard to determine the YMCA’s entitlement to the exemption. We disagree and affirm.
 
 I. Background
 A. The Initial Administrative Proceedings
 ¶3         In December 2003, the YMCA, a nonprofit organization, applied for religious purposes and charitable use property tax exemptions for two properties. The first, Snow Mountain Ranch, consists of 40 cabins, 12 vacation homes, and 61 campsites located on 2187 acres of land in Grand County. The second, the Estes Park Center, consists of 179 cabins, 25 vacation homes, and 451 lodge rooms located on 860 acres of land in Larimer County, near Rocky Mountain National Park. Each of the properties has a chapel, conference facilities, dining halls, a swimming pool, a laundromat, and maintenance and administration buildings.
 ¶         The properties offer a variety of recreational activities, including hiking, fishing, biking, horseback riding, cross-country skiing, tennis, roller skating, ropes courses, and fitness rooms. The properties also offer special activities and family programs such as Bible study, worship services, arts and crafts, story time at the library, and games. The YMCA provides guests with a schedule of activities, but it does not require guests to participate in any of the activities or religious services.
 ¶5         After reviewing the YMCA’s application for property tax exemptions, the state property tax administrator (tax administrator) determined that the properties were being used exclusively for religious purposes and granted a religious purposes exemption. The Grand and Larimer County Boards of Commissioners (the Counties) appealed the tax administrator’s determination to the Board, contending that the YMCA’s use of the properties was not sufficiently religious to entitle it to the exemption.
 ¶6         Following a hearing conducted in August 2006, the Board concluded that the properties were not used exclusively for religious purposes. The Board noted that the properties were open to the general public regardless of faith, the properties were marketed without reference to religion, and many guests did not participate in any “overtly Christian” activities. The Board also found that the YMCA operated public school programs that were devoid of religious content, and that the YMCA had accepted bond funds which could not be used for “pervasively sectarian purposes.” The Board upheld an exemption for the properties’ chapels and the religious activities center at Snow Mountain Ranch, finding that these areas were used for religious purposes, but otherwise reversed the grant of an exemption.
 B. YMCA I
 ¶7         The YMCA appealed and a division of this court reversed. The division concluded that the Board failed to apply the proper legal standard because it did not address the YMCA’s declaration of religious purposes contained in its application for tax exemption, the effect of the declaration’s presumed validity, or whether the presumption had been overcome. YMCA I, ¶60.
 ¶8         The division began with an overview of the constitutional and statutory framework for analyzing the propriety of a religious purposes property tax exemption. Article X, section 5 of the Colorado Constitution provides, “[p]roperty, real and personal, that is used solely and exclusively for religious worship . . . shall be exempt from taxation.” Under section 39-3-106(2), C.R.S. 2015, “many activities of religious organizations are in the furtherance of the religious purposes of such organizations,” and “activities of religious organizations which are in the furtherance of their religious purposes constitute religious worship for purposes of section 5 of article X of the Colorado Constitution.” YMCA I, ¶¶39­40 (quoting § 39-3-106(2)).
 ¶9         Consistent with these constitutional and statutory mandates, section 39-2-117, C.R.S. 2015, which sets forth the process for requesting a religious purposes exemption, instructs that a property owner must include on the application a declaration of its religious mission and religious purposes, as well as the uses of the property that are in furtherance of such mission and purposes. The declaration is “presumptive as to the religious purposes for which such property is used,” meaning the stated uses of the property are presumed to further the religious mission and purposes of the property owner. § 39-2-117(1)(b)(II). This presumption gives effect to the legislative pronouncement that the “constitutional guarantees regarding establishment of religion and the free exercise of religion prevent public officials from inquiring as to whether particular activities of religious organizations constitute religious worship.” § 39-3-106(2). In other words, the legislature has determined that neither tax officials nor courts should evaluate the religiousness of the use of the property because that kind of intrusive inquiry could lead to excessive entanglement with religion, in violation of the Establishment Clause. See YMCA I, ¶¶41-43 (“[I]t is a significant burden on a religious organization to require it, on pain of substantial liability, to predict which of its activities a secular court will consider religious.” (quoting Catholic Health Initiatives Colo. v. City of Pueblo, 207 P.3d 812, 818 (Colo. 2009))) (alteration in original).
 ¶10         Still, the applicant’s declaration may be challenged on three grounds: (1) the religious mission and purposes are not religious beliefs sincerely held by the applicant-property owner; (2) the property being claimed as exempt is not actually used for the purposes set forth in the application; or (3) the property is used for private gain or corporate profit. § 39-2-117(1)(b)(II).
 ¶11         The YMCA I division concluded that the Board had failed to consider the YMCA’s use of its property in light of its religious mission and purposes. Instead, it concluded that the Board had looked at the use of the property independent of the YMCA’s stated mission and purposes and, without considering the presumptive effect of the organization’s declared purposes, had deemed the uses of the property insufficiently religious to qualify for the exemption. YMCA I, ¶¶60-63. Implicit in the YMCA I division’s ruling was a conclusion that the Board had asked the wrong question. According to the division, the critical question under the statutory scheme is not “is the use of the property inherently or objectively religious?” but rather “does the use of the property further the religious mission and purposes of the property owner?” The division remanded to the Board to apply the correct legal standard.
 C. The Board’s Decision On Remand
 ¶12         On remand, the Board examined the YMCA’s declaration of its religious mission and purposes. In its application, the YMCA had stated that its primary purpose is:
 to provide a Christian environment and the necessary facilities and equipment to hold religious and educational conferences in the interests of youth; to foster in every way possible the interests and program of the Young Men’s Christian Associations; and to provide a program for family groups under Christian leadership.
 The YMCA listed six principles that it believed formed the foundation of a Christian environment: strong and unified families; character and educational development for youth; stewardship of one’s mind, body, and spirit; appreciation of and respect for the beauty of God’s creation; service to the community and the needy; and scriptural teaching.
 ¶13         The Board explained that the YMCA’s “overarching philosophy,” as expressed in its application, “is that Christianity is more effectively promoted through creating a receptivity to Christian principles than by directly proselytizing.”
 ¶14         The Board concluded that the YMCA was sincere in its stated mission and purposes, even though, as the Counties argued, the YMCA’s promotional literature did not contain “overtly Christian” references. The Board found that the absence of religious references in the materials was consistent with the YMCA’s anti-proselytizing philosophy.
 ¶15         Next, the Board considered the actual use of the property for which the exemption was sought. The Counties argued that activities like hiking, fishing, and skiing were not sufficiently religious to amount to “religious worship” under article X, section 5, for purposes of the tax exemption. The Board countered that the proper analysis precluded such an assessment:
 Colorado statutes as well as the First Amendment prohibit the kind of analysis that the Counties ask us to engage in. Under Section 39-3-106(2), public officials are prohibited “from inquiring as to whether particular activities of religious organizations constitute religious worship.” Instead, under Section 39-2-117(1)(b)(II), the relevant question is whether the actual use of the property is in line with the organization’s stated religious purposes, not whether the organization’s purposes or activities are objectively ‘religious.’
 ¶16         When considered in light of the YMCA’s religious mission and principles, the Board concluded that the use of the property is indeed in furtherance of the organization’s purposes. To promote strong and unified families, the YMCA offers a range of special family-oriented activities such as nature hikes, story time, and games. In furtherance of youth character and educational development, the YMCA provides programming for over 10,000 public school students every year. To promote “appreciation of and respect for God’s creation,” the YMCA offers a variety of outdoor recreational activities. And, in furtherance of its mission to help the needy, the YMCA provides discount lodging to transient visitors and free summer camp admission to poor children.
 ¶17         The Board determined that the YMCA’s religious mission and purposes, based on sincerely-held religious beliefs, were broad enough that each of the uses challenged by the Counties furthered the organization’s religious purposes.
 ¶18         Finally, the Board found that the YMCA’s property was not being used for private gain or corporate profit. It determined that the YMCA operated at a loss and depended on millions of dollars in contributions to remain solvent.
 ¶19         The Board also rejected as irrelevant the Counties’ argument that under Illinois’ purportedly similar statutory scheme, the YMCA’s declared mission would be rejected as overly broad and insufficiently religious. Illinois law may permit a tax exemption only for property used for public worship, Sunday school, or religious instruction, the Board acknowledged, but the Colorado legislature “has instructed that ‘religious worship has different meanings to different religious organizations’ and that ‘activities of religious organizations which are in furtherance of their religious purposes constitute religious worship.’”
 ¶20         Having determined that the YMCA’s use of its property was in furtherance of its religious mission and purposes, the Board concluded that the YMCA was entitled to a religious purposes exemption for all areas of the properties within its application.[2]
 II. The Current Appeal
 ¶21         The thrust of the Counties’ argument on appeal is that YMCA I was wrongly decided. According to the Counties, the use of the YMCA’s property must be evaluated independently of its religious mission and purposes. In other words, the Counties insist that the critical question is “is the use of the property inherently or objectively religious?” Hiking, they would say, is not a religious activity, regardless of whether a person hikes on property owned by the YMCA or on property owned by a luxury resort. Therefore, the fact that the hiking trails are on property owned by the YMCA, an organization with a religious mission and purposes, should not factor into the analysis.
 ¶22         And, even if the uses of the property must be considered in light of the property owner’s religious mission and purposes, the Counties argue, the presumption that the uses further the stated mission does not apply on review to the Board. That is, even if the tax administrator must presume that hiking furthers the YMCA’s religious mission, the presumption is not binding on the Board, and therefore the Board may make an independent judgment that hiking does not advance the YMCA’s mission.
 ¶23         Finally, the Counties contend that section 39-3-106(2) — which construes the religious purposes property tax exemption broadly, acknowledging that many different uses of property could be in furtherance of an organization’s religious mission — is unconstitutional.
 A. Law of the Case
 ¶24         As a preliminary matter, we recognize that, under the law of the case doctrine, we could decline to reexamine the prior division’s ruling. Ordinarily, when an appellate court issues a ruling, the ruling becomes the law of the case and is not subject to relitigation. Vashone-Caruso v. Suthers, 29 P.3d 339, 342 (Colo. App. 2001). However, the doctrine is merely discretionary when applied to a court’s power to reconsider its own prior rulings. Core-Mark Midcontinent, Inc. v. Sonitrol Corp., 2012 COA 120, ¶10. Thus, a division of this court may review another division’s ruling in the same case if there is the possibility that “the previous decision is no longer sound because of changed conditions or law, or legal or factual error, or if the prior decision would result in manifest injustice.” Id. (internal citation omitted).
 ¶25         Here, the Counties argue that the YMCA I division’s ruling was legal error that resulted in manifest injustice. Because legal error is an exception to the law of the case doctrine, and because the case involves important constitutional issues of broad public interest, we choose to reach the merits of the Counties’ arguments.
 B. Standard of Review
 ¶26         We may set aside an order of the Board only where the Board abused its discretion or where the order was arbitrary and capricious, based on findings of fact that were clearly erroneous, unsupported by substantial evidence, or otherwise contrary to law. § 24-4-106(7), C.R.S. 2015; Boulder Cty. Bd. of Comm’rs v. HealthSouth Corp., 246 P.3d 948, 951 (Colo. 2011).
 ¶27         The Board’s findings of fact are entitled to deference unless they are unsupported by competent evidence or reflect a failure to abide by the statutory scheme for property tax assessment. Family Tree Found. v. Prop. Tax Adm’r, 119 P.3d 581, 582 (Colo. App. 2005). However, we review challenges to the constitutionality of a statute de novo. HealthSouth Corp., 246 P.3d at 951; Morris-Schindler, LLC v. City & Cty. of Denver, 251 P.3d 1076, 1084 (Colo. App. 2010). A statute is presumed constitutional; one challenging its validity has the burden of proving it unconstitutional beyond a reasonable doubt. Morris-Schindler, LLC, 251 P.3d at 1084.
 C. Use of the Property Must be Considered in Light of the Organization’s Religious Mission and Purposes
 ¶28         The Counties’ primary argument is that the use of the YMCA’s properties must be examined without regard to the character of the property owner. When the use is viewed independently, the Counties say, it is clear that the YMCA’s properties are not used exclusively for religious purposes. The YMCA I division rejected this argument, and we do as well.
 ¶29         The question cannot be whether, as an objective matter, the property is used only for religious activities. For one thing, the statutory scheme requires a different inquiry. Under section 39-2-117(1)(b)(II), the applicant must provide a declaration of its religious mission and religious purposes and the uses of the property that are in furtherance of such mission and purposes. Under section 39-3-106(2), activities of a religious organization that are in furtherance of its religious purposes constitute religious worship. Finally, under article X, section 5 of the Colorado Constitution, property that is used solely and exclusively for religious worship shall be exempt from taxation. Accordingly, as the YMCA I division concluded, the inquiry for exemption purposes is whether the property is used for activities that further the organization’s religious purposes. If the answer is yes, the property is used for religious worship and is exempt from taxation.[3]
 ¶30         The Counties’ position is also foreclosed by supreme court case law. In Maurer v. Young Life, the supreme court explained that, although courts look to the “use to which the property is put,” the character of the property owner is relevant to “illuminate the purposes for which the property is used.” 779 P.2d 1317, 1331 (Colo. 1989). By considering the character of the property owner as a religious organization, the fact finder could reasonably conclude that even “nonreligious” activities furthered the property owner’s religious purposes. Id.; see also W. Brandt Found., Inc. v. Carper, 652 P.2d 564, 567-68 (Colo. 1982) (“[T]he character of the owner may often illuminate the purposes for which the property is used and need not be excluded from consideration.”); Kemp v. Pillar of Fire, 94 Colo. 41, 42, 27 P.2d 1036, 1036 (1933) (“[T]he character of the owner sheds an important side light on the nature of the use.”).
 ¶31         The Counties argue that the YMCA I division’s directive that the Board consider the YMCA’s religious mission “runs afoul” of Catholic Health Initiatives Colorado v. City of Pueblo, 207 P.3d 812 (Colo. 2009). That case involved the interpretation of a Pueblo municipal code provision exempting charitable organizations from payment of sales tax. To the extent Catholic Health is relevant to this case, its analysis is consistent with the standards articulated in YMCA I.
 ¶32         Catholic Health argued in the trial court that it was exempt from paying sales tax on goods used at a housing facility it operated because it was a religious organization and its operation of the housing facility was part of its regular religious functions and activities. The trial court affirmed the denial of the exemption on the ground that religion did not “pervade the operation” of the facility. It agreed with the city that Catholic Health was only exempt from payment of taxes on purchases related to the facility’s religious functions, like operation of the chapel, but not on purchases related to secular functions, like operation of the kitchen. Id. at 817.
 ¶33         The supreme court concluded that both the trial court and the court of appeals had mistakenly focused on the religious function issue and, therefore, the supreme court’s analysis was mostly unrelated to this issue. Nonetheless, the supreme court emphasized that the trial court’s parsing of the facility’s functions as religious or secular — the same kind of parsing the Counties urged the Board to engage in — would violate the Establishment Clause because it fostered excessive government entanglement with religion. Id. at 823. To avoid this type of entanglement, the court explained that it had adopted “a broad view, exempting ‘necessarily incidental’ property and activities of the religious organization entitled to a tax exemption.” Id. at 818. If the qualifying organization is religious in nature, the court instructed, the taxing authority should exempt from taxation not just religious uses or activities, but also those that are incidental to the primary purposes of the organization. Id. at 819.
 ¶34         We may not disregard the supreme court’s prohibition against public officials’ evaluation of certain activities as religious or secular. One could certainly anticipate problems with the Counties’ suggested rule that the use of the property, standing alone, must meet some undefined test of religiosity before the property could be exempt from taxation. It is not our place to undertake an examination of Christian doctrine to determine whether hiking is “overtly Christian” enough to count as a religious activity. See Tex. Monthly, Inc. v. Bullock, 489 U.S. 1, 20 (1989) (“The prospect of inconsistent treatment and government embroilment in controversies over religious doctrine seems especially baleful where . . . public officials determine whether some message or activity is consistent with the ‘teaching of the faith.’”); see also Haight v. Thompson, 763 F.3d 554, 567 (6th Cir. 2014) (The “Constitution prohibit[s], and judges lack the capacity to undertake, assessments of the centrality of faith-based practices to this or that religion.”); Van Osdol v. Vogt, 908 P.2d 1122, 1130 (Colo. 1996) (“[I]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants’ interpretations of those creeds.” (quoting Hernandez v. Comm’r, 490 U.S. 680, 699 (1989))) (alteration in original). After all, as the legislature has stated, “religious worship has different meanings to different religious organizations” and, for that reason, public officials who are tasked with granting or denying tax exemptions may not “inquir[e] as to whether particular activities of religious organizations constitute religious worship.” § 39-3-106(2).
 ¶35         We agree with the YMCA I division that the use of the property must be considered in light of the property owner’s religious mission and purposes.
 ¶36         On remand, as we have set forth above, the Board applied the proper standard and concluded that the YMCA’s use of its properties furthered its religious mission and purposes. The Counties do not challenge those factual findings on appeal.
 D. The Declaration’s Presumptive Effect Applies at All Stages of the Application Process
 ¶37         Alternatively, the Counties argue that even if the use of the YMCA’s properties must be considered in light of the organization’s religious purposes, the Board was not bound by the presumption, in section 39-2-117(1)(b)(II), that the stated uses were actually in furtherance of the YMCA’s religious purposes. We are not persuaded.
 ¶38         The Counties’ theory is that because the presumption is set forth in a subsection of section 39-2-117 that discusses the tax administrator’s review of the application, the presumption must apply only to the tax administrator’s determination. Furthermore, the Counties contend, the Board conducts a de novo review of the tax administrator’s determination, and therefore the Board is not bound by the presumption.
 ¶39         The Counties offer no authority for their ultimate conclusions, and we discern no basis for them in the law. First, section 39-2-117 is entitled “Applications for exemption – review – annual reports – procedures – rules.” It discusses the overall application process, including the availability of an appeal of the tax administrator’s determination to the Board and to the court of appeals. We conclude that, consistent with the structure of the statute, the presumption applies throughout the application process, including at any stage of review.
 ¶40         More importantly, we are unfamiliar with the concept of a legal presumption that evaporates on appeal, and the Counties have not offered any basis for their claim. A rebuttable presumption shifts the burden of going forward to the party against whom it is raised and, if that burden is not met, establishes the presumed facts as a matter of law. Krueger v. Ary, 205 P.3d 1150, 1154 (Colo. 2009). In this case, the property owner, having provided a declaration of its religious mission and purposes, is entitled to a presumption that its property is used in furtherance of that mission and those purposes. The reviewing body — either the Board or the court — must ensure that the presumption is given effect unless it is rebutted. Nothing in the statutory language would permit a reviewing body to disregard the statutory presumption. Indeed, section 39-2-125, C.R.S. 2015, which explains the duties of the Board, instructs that when hearing appeals from the tax administrator, the Board shall conduct hearings that “include evidence as to the rationale of [the tax administrator’s] order or decision and the detailed data in support thereof.” § 39-2-125(1)(b)(II). This language suggests that the Board’s job is to review the basis of the tax administrator’s decision, including its application of the presumption, not that the Board must apply an entirely new legal standard to the application.
 ¶41         Finally, contrary to the Counties’ assertion, the statutory presumption does not relieve the property owner of the burden of proving entitlement to the tax exemption, such that it could not be binding on the Board. See W. Slavonic Ass’n v. Prop. Tax Adm’r, 835 P.2d 621, 622 (Colo. App. 1992) (stating that statutory presumption that fraternal organization used property for charitable purposes relieves organization of burden of establishing such use; it did not relieve organization of burden of showing entitlement to exemption). Rather, as we have discussed, the presumption, which merely relieves the religious organization of establishing that its use of the property is for religious purposes, prevents the kind of court entanglement in religion that the supreme court cautioned against in Maurer and Catholic Health.
 ¶42         We conclude that the statutory presumption applies to the Board’s review of the tax administrator’s decision. The Counties have made no argument that the presumption was rebutted. Accordingly, we determine that the Board applied the correct legal standard and that its findings are supported by substantial evidence in the record.
 E. The Counties Have Failed to Demonstrate That Section 39-3-106(2) Is Unconstitutional
 ¶43         The Counties contend that section 39-3-106(2) is unconstitutional and violates the separation of powers doctrine because it permits the General Assembly to interpret and apply Colorado’s Constitution.[4]
 ¶44         Although the Counties did not raise this issue at the administrative level, it is not waived. “[A] party involved in an administrative action is not required to raise constitutional issues in an administrative forum because” an administrator’s rulings on constitutional issues are not authoritative. Spedding v. Motor Vehicle Dealer Bd., 931 P.2d 480, 485 (Colo. App. 1996); see also Denver Ctr. for the Performing Arts v. Briggs, 696 P.2d 299, 305 n.5 (Colo. 1985). According to section 39-8-108(2), C.R.S. 2015, this court has initial jurisdiction to review final orders of the Board. Therefore, the Counties’ constitutional challenge is properly before us.
 ¶45         We agree with the Counties that the final authority to construe the constitution is vested in the judiciary. See, e.g., United Presbyterian Ass’n v. Bd. of Cty. Comm’rs, 167 Colo. 485, 493, 448 P.2d 967, 971 (1968). Still, the General Assembly may pass legislation clarifying constitutional provisions. See, e.g., In re Great Outdoors Colo. Tr. Fund, 913 P.2d 533, 539 (Colo. 1996) (“In enacting legislation, the General Assembly is authorized to resolve ambiguities in constitutional amendments in a manner consistent with the terms and underlying purposes of the constitutional provisions.”). Here, section 39-3-106(2) merely codifies and clarifies the principles of religious neutrality and nonentanglement mandated by the United States and Colorado Constitutions and controlling case law. See, e.g., Lemon v. Kurtzman, 403 U.S. 602, 612-14 (1971); Maurer, 779 P.2d at 1331-35.
 ¶46         But even if we were to construe the provision as an expansion or limitation of the constitutional right to a religious purposes property tax exemption, this legislative action is likewise authorized. Article X, section 5 exempts from taxation property used for religious worship, unless otherwise provided by law, thus “leaving it absolutely within the power of the Legislature to limit, modify, or abolish the exemptions provided by the Constitution.” McGlone v. First Baptist Church, 97 Colo. 427, 431, 50 P.2d 547, 549 (1935). Accordingly, we find no violation of the separation of powers doctrine.
 III. Conclusion
 ¶47         The order of the Board is affirmed.
 JUDGE TAUBMAN and JUDGE J. JONES concur.

 [1] The charitable use exemption is not at issue in this appeal.
 [2] The YMCA did not seek tax exemption for certain parts of the properties, including residences of full-time residential staff and property contracted to third-party vendors for commercial use. These areas have never been at issue in the case.
 [3] The Counties continue to urge us to adopt the standard for religious tax exemption under Illinois law, which distinguishes between purely religious activities and those of a more secular nature. We decline to adopt the Illinois standard because it is inconsistent with Colorado’s legislative scheme and case law from our own jurisdiction.
 [4] The Counties also argue that section 39-3-106(2), C.R.S. 2015, violates the Establishment Clause because it aids all religions. That argument is foreclosed by Walz v. Tax Comm’n, 397 U.S. 664, 669-74 (1970).
 
These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here.