No. 18,743.

BOARD OF COUNTY COMMISSIONERS OF FREMONT COUNTY
*v.* DORIS I. SALARDINO.
(329 P. [2d] 629)

Decided September 8, 1958.   Rehearing denied September 22, 1958.

Messrs. STINEMEYER & STINEMEYER, for plaintiff in error.

Mr. H. R. HARWARD, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

IN this opinion we shall refer to the plaintiff in error as the Board and to the defendant in error as the Applicant.

Applicant seeks a retail liquor store license for the premises known as 801 Cyanide Avenue — *Capitol Hill,* a nine block subdivision in Fremont County, Colorado. The location of the proposed outlet is in a subdivision which is not a part of any incorporated town or city; it lies to the south of and is almost immediately adjacent to South Canon City, an incorporated town having a population of 2800 to 3500; it is on the south side of the Arkansas River, which separates Canon City from South Canon City.

Applicant filed her application December 20, 1956, and shortly thereafter the Board, after proper notice but without proper hearing, findings or record, denied the same. On certiorari to the District Court of Fremont County, the court reversed the action of the Board and ordered the license to issue. The Board brought the matter to this court by writ of error and the judgment was reversed and the matter referred back to the Board for

complete hearing, findings and record. *(County Commissioners of Fremont County v. Salardino,* 136 Colo. 421, 318 P. (2d) 596.)

Pursuant to said remand and in compliance therewith a full hearing on the application was had before the Board on March 7, 1958, and on March 10, 1958, the Board entered its "findings and judgment" again denying the application. The Applicant and all parties interested were given an opportunity to be heard under oath, all exhibits offered were received in evidence, and a full and complete record made of the proceedings.

On March 20, 1958, the Applicant filed her complaint under Rule 106 (a) (4), R.C.P. Colo., in the nature of certiorari in the District Court of Fremont County, seeking review of the judgment of the Board. The trial court again reversed the findings and order of the Board and directed the issuance of the license applied for. The Board is here by writ of error, seeking review and reversal of the judgment of the trial court.

Five witnesses testified, urging granting of the application; nine testified in opposition. About one hundred persons wrote letters or signed petitions requesting the Board to grant the application; a few living in or owning property in proximity to the location of the proposed outlet, though not advocating the issuance of the license, stated they had no opposition to its issuance, several only vouched for the good character and qualifications of the Applicant.

Written petitions opposed to the granting of the license, signed by about 250 residents of the area described in the petitions as: "all in the neighborhood of 801 Cyanide Avenue * * *" were presented to the Board, and nine witnesses tetified in opposition to the granting of the license.

The evidence is undisputed that within a very limited area surrounding the proposed location there are three bars where liquor is sold and three where 3:2 beer is sold. The proposed outlet is next door to a bar and restaurant

operated by Applicant's husband. There are no licensed outlets of any kind in South Canon City, which lies immediately to the south of the Arkansas River and north of Capitol Hill.

South Fourth Street and South Ninth Street of South Canon City are the only means of ingress and egress to Capitol Hill wherein the proposed location is situate.

The Board's findings consist of twenty folios and it found and determined in substance that:

(1) The "neighborhood" *immediately affected* by the application is the area bounded on the east by Ninth Street, on the west by Fourth Street (these are the two access streets), on the north by Griffin Street, and on the south by Elm Street, which is the south boundary line of "Capitol Hill Subdivision." The area consists of about fifteen acres, about one half of which is platted; the other half unplatted and apparently largely unoccupied. The Board also found that granting of the license would create a new type of liquor license in a new area and that a much larger district, substantially all of South Canon City, would be *affected* by issuance of the license.

(2) Licenses already granted "in this locality," four in Canon City proper, about one and a half miles from the proposed location, serve the reasonable requirements of the neighborhood; that all of the Canon City outlets make free deliveries to the area of the proposed outlet and which area is much nearer to existing outlets in Canon City than is much of Canon City.

(3) The location is in an unincorporated area and subject to policing by the sheriff only, and he has insufficient personnel to do the job.

(4) The streets in Capitol Hill are inadequately lighted and the area surrounded by vacant and unimproved land, which would attract loiterers, young people, and create added police problems.

Based on these findings of fact, the Board denied the application.

The trial judge, prior to the entry of written findings and judgment, made oral comments on the facts and the law which take up sixty-six folios of the record. He did not agree with the Board's determination of the area constituting the neighborhood, but offered no solution of the problem; he stated he could find no evidence that the neighborhood is adequately served, but made no finding that it was inadequately served. His written judgment held that the denial of the license was arbitrary and capricious and directed that the license issue forthwith.

The Board is by statute charged with the duty and task of determining whether the license should be granted or denied. The only statutory guide provided for the Board in performing this duty is found in C.R.S. '53, 75-2-9.

*"Before granting any license* all licensing authorities shall consider the *reasonable requirements* of the *neighborhood,* the *desires* of the *inhabitants* as evidenced by petitions, remonstrances or otherwise and all other reasonable restrictions which are or may be placed upon the new district by the licensing authority of the city and county or the council of the city or town or by the board of county commissioners of any county." (Emphasis supplied.)

We note the statute makes no provision as to what steps the Board shall take *before denying any license.* ▪ Another source of guidance for the Board in performing its duties as licensing authority are the numerous pronouncements of this court, not all of which are easy of reconciliation. However, three principles pervade all of our pertinent decisions: (1) the licensing authorities are vested with a very wide discretion; (2) all reasonable doubts as to the correctness of the Board's rulings are to be resolved in favor of the Board; (3) the determination of the Board will not be disturbed by the courts unless it appears that the Board has "abused its discretion."

In our previous remand of this case, we said: "* * * an applicant is entitled to a license only on proof * * * that * * * the neighborhood sought to be served is not adequately served by other licensed outlets."

Though the Applicant protests the finding of the Board as to the boundaries of the neighborhood, she does not suggest what would be proper boundaries, does not even state whether the area is too great or too small. The evidence shows that Applicant submitted as proponents of her application the names of thirty-nine persons residing in the neighborhood as defined by the Board; thirty of those were in Capitol Hill, nine outside of it. She submitted as proponents of her application the names of twenty-seven persons residing in South Canon City and the unincorporated territory south of the river and adjacent to the city and outside of the neighborhood as defined by the Board; she also submitted as proponents of her application the names of two persons residing in Canon City proper and within five blocks of four retail liquor stores.

It was incumbent upon the Applicant to show with some degree of clarity the area of the neighborhood *requiring* the service proposed to be rendered. This the Applicant failed to do and, having submitted petitions and letters signed by alleged *inhabitants of the neighborhood* who reside far from the proposed outlet, has greatly weakened the force of her claim that the Board "abused its discretion" when it included in the neighborhood, as determined by it, portions of the areas from which Applicant obtained and submitted signatures to be considered by the Board in passing on her application. Had the Board determined a neighborhood of larger area, the area south of the river or the whole area from which residents urged the granting of the license, the proportion of remonstrators over proponents would have been much greater than in the area designated by the Board as the neighborhood. The Board, in designating the area bounded on the east and west by the only access

streets to the location, bounded on the north by the only through street connecting the access streets and on the south by open and, so far as the record shows, unoccupied lands, it would seem has exercised a wise and logical discretion and cannot be charged with an abuse thereof as urged by the Applicant.

Turning now to the requirements of the neighborhood. The Applicant presented five witnesses in support of her application. They were: (a) herself and her husband, both of whom stressed the dire needs of the neighborhood; (b) a resident of Canon City, living about two miles from the proposed location, owner of property in Capitol Hill, who stated that he felt a new outlet would not hurt property values, and (c) one who owns his home and resides in Capitol Hill, and another who rents a home and resides in Capitol Hill, both of whom testified that a retail liquor store was needed so people would not have so far to go to get a bottle.

The most that can be made of this testimony is that a retail liquor store, closer than others now patronized, would be a welcome convenience. There was a total lack of evidence of unquenched thirsts or of distress or hardship visited upon any of the proponents or anyone else resulting from lack of facilities to meet the reasonable requirements of the neighborhood. We find no abuse of discretion on the part of the Board in its finding that the reasonable requirements of the neighborhood are adequately served by existing outlets in the locality coupled with free delivery service to those residents of the pictured parched area designated as Capitol Hill who desire such service.

Applicant complains bitterly of the fact that notice of the time and place of the hearing was published three times by the Board in the local newspaper despite the fact that the Applicant and the Board had stipulated that the original published notice of hearing would be considered as compliance with the statutory require-

ment. The notices complained of were published not in compliance with statutory notice requirements, but for the purpose of giving notice to the public of the pending hearing and to the end that all persons interested could know of the time and place of the hearing. The question presented to the Board for resolution was a matter of public interest, and, as evidenced by subsequent events, of great public interest. We find no merit in the contention that "too much notice was given." It is no doubt true that publication of the additional notices provoked a wider and greater interest in the matter, a desired result and one that was intended when this court, in remanding the matter, stated that it should be "for hearing * * * and the taking and recording of *all testimony,* exhibits and other evidence in support of the application, together with *all testimony,* exhibits and evidence in opposition to the application * * *."

Counsel for Applicant contended at the hearing and here contends that the Board could consider only the exhibits offered at the first abortive hearing and the testimony of only those witnesses who testified at that hearing. The matter was remanded for a complete hearing which the Board, in compliance with the mandate, properly held.

Applicant also contends that the Board having granted three bar licenses and three 3.2 licenses in the Capitol Hill area, constitutes an adjudication that the reasonable requirements of the neighborhood call for a retail liquor store license. This contention is well answered in *Board of County Commissioners v. Buckley,* 121 Colo. 108, 213 P. (2d) 608, wherein this court said:

" * * * The defendant board was not bound by any prior action of any licensing authority with relation to the facts pertaining to the issuance of any license for former years, but was called upon to exercise its own discretion as of the date of the new application. Conceivably the licensing authority passing upon the new application, in the exercise of its discretion, might with

propriety reject an application which a former board, upon the same facts, had approved, and in so doing the board would not, of necessity, be guilty of an abuse of discretion, or an arbitrary and capricious exercise thereof. * * *."

The above language was quoted with approval in *MacArthur v. Martelli,* 127 Colo. 308, 255 P. (2d) 969.

The findings of the Board are adequately supported by the record before us and its order denying the application was well within its discretionary powers.

The judgment of the trial court is reversed.

MR. JUSTICE MOORE and MR. JUSTICE DAY not participating.