**MORRIS–SCHINDLER, LLC, a Colorado limited liability company, d/b/a Roslyn Grill, Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF DENVER, a political subdivision of the State of Colorado, by and through The Office of the Director of Excise and Licenses, acting as local licensing authority, Defendant–Appellee.**

No. 09CA1997.

Colorado Court of Appeals,
Div. III.

Sept. 2, 2010.

Dill Dill Carr Stonbraker & Hutchings, PC, H. Allen Dill, Adam P. Stapen, Denver, Colorado, for Plaintiff–Appellant.

David R. Fine, City Attorney, John D. Poley, Assistant City Attorney, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

Morris–Schindler, LLC (the licensee), doing business as Roslyn Grill (the establishment), appeals the court order upholding the nonrenewal of its hotel and restaurant liquor license by the City and County of Denver. We affirm in part, reverse in part, and remand for a determination of good cause in accordance with the views expressed in this opinion.

For more than twenty-six years, the licensee operated the establishment in Denver. Following the application for the renewal of the license in 2008, the Director of Excise and Licenses for Denver (director) issued an order directing the licensee to show cause why the renewal of the license should not be denied. *See* § 12–47–302, C.R.S.2009. The order gave notice of specific violations of the liquor laws during the term of the current license. These alleged violations were: (1) an undercover narcotics transaction occurring in the establishment that resulted in a declaration of a public nuisance being issued to the owner of the premises; (2) two sales of alcohol to a minor; (3) thirteen emergency calls involving fights, assaults, and sales of drugs; and (4) the regular presence of drunken or passed-out customers.

Following a hearing, the hearing officer recommended nonrenewal of the license based upon a finding of good cause and relying on all of the matters noticed. The director adopted the recommendation and issued a final decision.

The licensee commenced an action under C.R.C.P. 106(a)(4), asserting that the director misapplied the law by applying a strict liability standard to the alleged violations, that there was no competent evidence supporting the director's final order, and that the liquor license law was unconstitutional as applied.

The trial court concluded that the director did not abuse her discretion in finding that (1) the two sales to a minor and (2) the regular presence of over-served, intoxicated patrons loitering in front of the bar, a violation of Division of Liquor Enforcement Rule 47–900, 1 Code Colo. Regs. 203–2 (C.C.R.47–900), constituted good cause for nonrenewal. However, the trial court concluded that the director abused her discretion in concluding that an undercover narcotics transaction, which occurred in the establishment, constituted good cause for nonrenewal as there was no evidence that the licensee was aware of, involved with, or permitted the sale.

On appeal, the licensee argues that the director abused her discretion (1) in applying a strict liability standard in connection with violations of the Colorado Liquor Code (Code); (2) in finding that the licensee permitted an undercover narcotics transaction; (3) in finding that the licensee permitted the sale of alcohol to intoxicated customers, and then permitted the intoxicated customers to loiter inside and outside the premises; (4) in not imposing the sanctions criteria for violations of the Code in the renewal hearing for good cause; and (5) in denying renewal as that action was manifestly excessive.

## I.

In an appeal of a C.R.C.P. 106(a)(4) proceeding, we review the decision of the administrative body, not that of the trial court. *Woods v. City & County of Denver,* 122 P.3d 1050, 1053 (Colo.App.2005). C.R.C.P. 106(a)(4) review is limited to a determination of whether the administrative agency exceeded its jurisdiction or abused its discretion. *Jayhawk Cafe v. Colo. Springs Liquor & Beer Licensing Bd.,* 165 P.3d 821, 824 (Colo.App.2006). We may consider whether the agency misconstrued or misapplied the law. *Bd. of County Comm'rs v. Conder,* 927 P.2d 1339, 1343 (Colo.1996). However, we can reverse a finding of fact made by an administrative agency only if there is no competent evidence to support it. *City of Colorado Springs v. Givan,* 897 P.2d 753, 756 (Colo.1995). " 'No competent evidence' means that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be ex-

plained as an arbitrary and capricious exercise of authority." *Id.*

As pertinent here, section 12–47–302(1), C.R.S.2009, authorizes the local licensing authority to refuse to renew a liquor license "for good cause shown, subject to judicial review." In *Squire Restaurant & Lounge, Inc. v. City & County of Denver,* 890 P.2d 164 (Colo.App.1994), a division of this court held that the term "good cause" was overbroad, and, therefore, unconstitutional. In apparent response, the General Assembly defined the term. Section 12–47–103(9)(a), C.R.S.2009, now provides:

> "Good Cause," for the purpose of refusing or denying a license renewal or initial license issuance, means:
>
> (a) The licensee or applicant has violated, does not meet, or has failed to comply with any of the terms, conditions, or provisions of this article or any rules and regulations promulgated pursuant to this article.

## II.  Strict Liability

■ The licensee first argues that the director abused her discretion by applying a strict liability standard for violations of the Code. More specifically, the licensee argues that each provision of the Code cited by the director as a violation by the licensee, which formed the basis for good cause not to renew, contains the word "permit," which requires some level of knowledge, rather than strict liability and, therefore, the director misconstrued the law. We agree.

■ Statutory interpretation is a question of law, which we review de novo. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). When construing a statute, we must determine the intent of the legislature. *State v. Nieto,* 993 P.2d 493, 500 (Colo.2000). Under the basic principles of statutory interpretation, we first determine whether the statutory language has a plain and unambiguous meaning. *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004).

In her final decision, the director made the following findings of fact and conclusion of law:

> 6. [Licensee,] itself or through its witness, did not refute or deny the evidence

presented at the hearing regarding the sales of alcohol to minors—a violation of Section 12–47–901(1)(a.5) of the Code and failure to comply with the Code, the sale of drugs inside the premises—a violation of Colorado Code of Regulations 47–900, and the regular presence of over-served, drunk patrons coming out of and standing in front of [the establishment]—a violation of Section 12–47–901(5)(a) of the Code and Colorado Code of Regulations 47–900. The incidents demonstrate that the record of [licensee] is such that a potential violation of the Code may occur if [the] license is renewed.

The statutes or regulations defining these violations contain the word "permit," and previous decisions by divisions of this court have held that the word "permit" in the Code requires a showing of actual or constructive knowledge. *See Full Moon Saloon, Inc. v. City of Loveland,* 111 P.3d 568, 569–70 (Colo. App.2005) (stating "that a licensee is not held to a strict liability standard and that some level of knowledge by the licensee must be established by the evidence"); *see also Costiphx Enterprises, Inc. v. City of Lakewood,* 728 P.2d 358, 360 (Colo.App.1986) (stating that even though undercover police officers met at a pub to place and pay off bets, there was no evidence that the owners or employees were aware of these activities and, therefore, "it cannot be said that plaintiff or its agents 'permitted' or 'authorized' the professional gambling as prohibited by the regulation"); *400 Club, Inc. v. Canjar,* 523 P.2d 141, 142 (Colo.App.1974) (not published pursuant to C.A.R. 35(f)); *Clown's Den, Inc. v. Canjar,* 33 Colo.App. 212, 215, 518 P.2d 957, 959 (1973).

Therefore, in our view, the director misconstrued and misapplied the law when she applied a strict liability standard to violations of the Code and regulations.

## III.  Violations

The director concluded that permitting the sale of narcotics in the establishment was a violation of C.C.R. 47–900; that the regular presence of over-served, drunken patrons inside and outside the establishment violated both section 12–47–901(5)(a), C.R.S.2009, and

C.C.R. 47–900; and that serving underage customers violated section 12–47–901(1)(a.5), C.R.S.2009. Further, the director concluded that these cumulative violations could be considered in denying renewal of the license. We disagree with the director as to the narcotics sale only.

Again, an issue of statutory interpretation is reviewed de novo. *Klinger,* 130 P.3d at 1031; *Cendant Corp. & Subsidiaries v. Department of Revenue,* 226 P.3d 1102, 1106 (Colo.App.2009) (applying de novo review to the Colorado Code of Regulations). Also, under C.R.C.P. 106(a)(4), judicial review of an administrative body's decision is limited to a determination of whether the body has exceeded its jurisdiction or abused its discretion. *Jayhawk Cafe,* 165 P.3d at 824.

We may only determine if the record supports the decision, not whether we would arrive at a different decision. *City of Manitou Springs v. Walk,* 149 Colo. 43, 46, 367 P.2d 744, 746 (1961). "All reasonable doubt must be resolved in favor of the action of the licensing authority." *Id.* (citing *Bd. of County Comm'rs v. Salardino,* 138 Colo. 66, 329 P.2d 629 (1958)). A decision may be overturned for lack of competent evidence, meaning that the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority. *Givan,* 897 P.2d at 756.

### A. Sale of Narcotics

The Director concluded that permitting, or failing to prevent, illegal drug sales in the establishment was a proper basis for not renewing the license. The licensee argues that there is no competent evidence in the record to establish that it had actual or constructive knowledge of the narcotics transaction. We agree with the licensee.

On July 11, 2007, an undercover narcotics sale occurred inside the establishment. Denver then issued a public nuisance abatement program notice to the owner of the building in connection with this sale. The director found good cause for nonrenewal based, in part, on the narcotics sale and the nuisance abatement program, concluding that the licensee violated C.C.R. 47–900.

The record indicates that the drug transaction resulted from an undercover operation by the police, who targeted a drug dealer standing near the establishment, not the establishment. The drug dealer, after agreeing to sell illegal drugs, requested that the investigating officer follow him into the establishment to complete the transaction, which occurred. The nuisance abatement program was issued solely in response to this incident.

At the administrative hearing, the investigating officer testified that he had no idea whether any of the employees or owners of the establishment had observed the transaction. In addition, the officer never asked the dealer if he had previously sold illegal drugs in the establishment. Further, the bartender on duty testified that she was not aware of the undercover narcotics transaction and was "shocked" when the other participating officers entered the establishment to arrest the dealer. Therefore, the evidence does not support any finding that the licensee was aware of, involved with, or permitted the sale of narcotics in the establishment. The evidence also failed to establish that the building owner had failed to comply with the terms of the nuisance abatement program.

C.C.R. 47–900 provides:

Each person licensed under Article 46, 47, and 48 of Title 12, and any employee or agent of such licensee shall conduct the licensed premises in a decent, orderly and respectable manner, and shall not *permit* on the licensed premises the serving or loitering of a visibly intoxicated person or habitual drunkard, nor shall the licensee, his employee or agent *knowingly permit* any activity or acts of disorderly conduct as defined by and provided for in Section 18–9–106, C.R.S., nor shall a licensee *permit* rowdiness, undue noise, or other disturbances or activity offensive to the senses of the average citizen, or to the residents of the neighborhood in which the licensed establishment is located.

(Emphasis added.) As stated above, we agree with the prior case law which requires

actual or constructive knowledge in order for a licensee to violate this regulation.

■ Actual knowledge is "[d]irect and clear knowledge." *Black's Law Dictionary* 888 (8th ed.2004). Constructive knowledge is knowledge that one exercising reasonable diligence should have. *See Full Moon Saloon,* 111 P.3d at 570; *see also State v. Moldovan,* 842 P.2d 220, 229 (Colo.1992). Indeed, constructive knowledge is defined as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Black's Law Dictionary* at 888.

There is no evidence that the licensee or its employees were aware, or should have been aware, of the narcotics transaction. Thus, it cannot be said that the licensee or its employees had actual or constructive knowledge of the transaction. *See Costiphx Enterprises,* 728 P.2d at 360 (finding the plaintiff had no knowledge of illegal gambling when owners and employees were not aware of the illegal gambling).

### B.   Over–Service and Drunken Patrons

■ The licensee argues that there was no competent evidence concerning the regular presence of over-served, intoxicated patrons loitering in front of the establishment, a violation of section 12–47–901(5)(a) and C.C.R. 47–900. We disagree.

The record includes at least twelve emergency dispatch calls regarding disturbances at the establishment or in its immediate vicinity. Further, it contains an analysis by the Denver Department of Safety of the emergency dispatch calls. The testimony of the licensee's employees confirmed that they made several emergency dispatch calls arising out of disturbances in the establishment. Additional testimony indicated that the licensee's employees regularly attempted to run off loiterers and remove drunk or disorderly patrons from the establishment. Neighbors of the establishment testified that they observed drug sales outside the establishment, numerous over-intoxicated individuals entering and exiting the establishment, and altercations outside the establishment.

The director found that the regular presence of over-served, drunken patrons coming out of and standing in front of the establishment was a violation of section 12–47–901(5)(a) and C.C.R. 47–900, and that permitting disturbances or activity offensive to the senses of the establishment's neighborhood violated C.C.R. 47–900.

C.C.R. 47–900 and section 12–47–901(5)(a) make it unlawful to sell, or permit the sale, of an alcoholic beverage to any person under the age of twenty-one years, a habitual drunkard, or a visibly intoxicated person.

■ A lay witness who has had sufficient opportunity to observe the demeanor and conduct of another may express an opinion whether the latter was intoxicated. *Jones v. Blegen,* 161 Colo. 149, 420 P.2d 404 (1966). Further, the witnesses testified that the behavior was open and obvious. Although the evidence was in conflict, there was ample evidence—emergency dispatch calls and lay testimony—concerning behavior at the establishment.

Therefore, there was sufficient competent evidence to support a conclusion that the licensee violated the Code by failing to comply with C.C.R. 47–900, by over-serving patrons, and by permitting overly intoxicated patrons to remain within, and immediately outside, the establishment.

### C.   Serving Underage Customers

■ The licensee does not dispute the incidents of serving underage customers, § 12–47–901(1)(a.5); nor does it dispute that it had constructive knowledge of the two sales of alcohol to underage customers. These violations may be imputed to it because an employee of the establishment through the exercise of reasonable care would have requested identification from the customer and thereby determined that the customer was not authorized to purchase or consume alcoholic beverages. *See Full Moon Saloon,* 111 P.3d at 571.

### IV.   Standards for Nonrenewal

Next, the licensee argues that the criteria for imposing a sanction for a violation of the Code must also be met before a violation may

be used as a basis for a good cause determination upon renewal. Further, it argues that if the criteria do not apply, then the statute is void for vagueness. We are not persuaded by either argument.

■ Again, we review an issue of statutory interpretation is de novo. *Minh Le v. Colorado Dep't of Revenue*, 198 P.3d 1247, 1251 (Colo.App.2008). In addition, we review constitutional challenges de novo. *E–470 Public Highway Auth. v. Revenig*, 91 P.3d 1038, 1041 (Colo.2004); *Zelenoy v. Colorado Department of Revenue*, 192 P.3d 538, 542 (Colo.App.2008) (reviewing void for vagueness challenge de novo). A statute is presumed constitutional, and we should construe the statute to uphold its constitutionality whenever a reasonable and practical construction may be applied. *People v. Longoria*, 862 P.2d 266, 270 (Colo.1993). And, because a statute is presumed constitutional one challenging its validity has the burden of proving the statute to be unconstitutional beyond a reasonable doubt. *People v. Fuller*, 791 P.2d 702 (Colo.1990).

### A. Sanctions Criteria

■ The licensee argues that the renewal process under section 12–47–302(1) is parallel to the sanction process under section 12–47–601, C.R.S.2009, and, therefore, the director should apply the same criteria. We can find no support for this argument in the statute or in the cases construing or applying it.

To the best of our understanding, the licensee is arguing that, to support a nonrenewal, violations have to support a revocation under the parallel procedure. For instance, under the Colorado Code of Regulations a license may be suspended for five to thirty days for two sales of alcohol to a minor within a year (but the licensing authority may accept a fine instead). Division of Liquor Enforcement Rule 47–604(B), 1 Code Colo. Regs. 203–2. Not until a licensee has four sales to a minor within two years may its license be revoked. Division of Liquor Enforcement Rule 47–604(D), 1 Code Colo. Regs. 203–2. Therefore, under the licensee's interpretation, a licensee would have had to make four sales to minors within two years in

order for the director to deny renewal on that basis.

As noted, a division of our court held in *Squire Restaurant & Lounge* that when the director refused to renew a liquor license for good cause, absent regulations defining good cause, the licensee's due process rights were violated. 890 P.2d at 170–71. In response, the General Assembly defined good cause, as quoted above. The licensee argues that, by adopting a statutory definition, the General Assembly intended to implement the criteria that the Department of Excise and Licenses has developed involving the imposition of sanctions. "When the General Assembly has intended the criteria that apply to a decision whether to issue or revoke a license also to apply to a decision whether to renew a license, it has so indicated by the wording of the statute." *Id.* at 169.

■ When discerning legislative intent, we look first and foremost to the language of the statute itself. When the legislature defines a term in the statute, that term must given its statutory meaning. *R.E.N. v. City of Colorado Springs*, 823 P.2d 1359, 1364 (Colo.1992).

■ Here, the statute could not be clearer: The director "may refuse to renew any license for good cause, subject to judicial review." § 12–47–302(1). Good cause, as stated above, includes when a "licensee or applicant has violated, does not meet, or has failed to comply with *any* of the terms, conditions, or provisions of this article or any rules and regulations promulgated pursuant to this article." § 12–47–103(9)(a) (emphasis added). Under the plain language of the statute, any violation of a provision of the Code constitutes good cause for nonrenewal.

There is no provision in the Code linking the discretion of the licensing authority in nonrenewal proceedings to the provisions applicable to the issuance, suspension, or revocation of a license. *See Squire Restaurant & Lounge*, 890 P.2d at 168–69; *A.J.C. Enterprises, Inc. v. Pastore*, 473 A.2d 269, 274 (R.I.1984); *Rose Garden Restaurant Corp. v. Hostetter*, 32 A.D.2d 301, 304, 300 N.Y.S.2d 948, 951 (1969) ("but, in declining to renew a

license, the Authority is not limited to those causes which would justify a revocation").

■ Further, the intent of the General Assembly is effectuated by considering the statutory scheme as a whole and giving a consistent, harmonious, and sensible effect to each individual section. *In re Regan,* 151 P.3d 1281, 1284 (Colo.2007).

Accordingly, we reject the licensee's argument that the sanctions criteria govern the decision not to renew.

### B. Constitutionality

■ Next, the licensee argues the statute is unconstitutionally vague because (1) there is no fair notice as to what violation would be good cause for nonrenewal and suspension; (2) there are no guidelines limiting the agency's discretion; and (3) thus there can be no meaningful judicial review. Further, the licensee argues that it makes no sense that the General Assembly would have intended that the same violation could support nonrenewal but not revocation. We are not persuaded.

■ A statute that is unconstitutionally vague "constitutes a denial of due process of law under the United States and Colorado Constitutions." *People v. Moyer,* 670 P.2d 785, 789 (Colo.1983). The Fourteenth Amendment to the United States Constitution and article II, section 25 of the Colorado Constitution protect individuals from arbitrary governmental restrictions on property and liberty interests. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *People v. Chavez,* 629 P.2d 1040 (Colo.1981). "In addressing due process issues, courts employ a bifurcated analysis requiring an initial delineation of the nature and extent of the asserted interest and, in the event that interest is constitutionally protected, an evaluation of the adequacy of the challenged process." *Watso v. Colo. Dep't of Social Services,* 841 P.2d 299, 304 (Colo.1992) (citing *Chavez,* 629 P.2d at 1045).

■ The Due Process Clauses of the federal and state constitutions protect individuals and entities from immediate governmental interference with present property interests, but not from possible governmental interference with potential property interests. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Therefore, a person claiming an unfair governmental deprivation of an interest in property must possess more than an anticipation of ownership of property. *Id.; Rich v. Secretary of Army,* 735 F.2d 1220, 1226 (10th Cir.1984).

■ A liquor license, like any business or professional license, is a property right which is entitled to due process protection. *LDS, Inc. v. Healy,* 197 Colo. 19, 589 P.2d 490 (1979). However, a licensee has no vested right to renewal of a license. *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 17–18 (Colo.1993) (bail bond license); *Board of Comm'rs v. Buckley,* 121 Colo. 108, 117, 213 P.2d 608, 612 (1949) (liquor license); *Pomponio v. City Council,* 526 P.2d 681, 682 (Colo. App.1974) (not published pursuant to C.A.R. 35(f)) (liquor license). Therefore, a licensee has no property right in the renewal of a license and need not be provided procedural due process protections attendant to a property right. *Ficarra,* 849 P.2d at 19–20.

Accordingly, we reject the licensee's argument.

### V.

Finally, the licensee argues that it was an abuse of discretion to deny renewal because, when applying the sanction criteria to the facts of this case, the director's decision not to renew the license was manifestly excessive. However, the nonrenewal of a liquor license is not a sanction.

### VI. Conclusion

■ The director concluded that there was good cause for not renewing the license based cumulatively on licensee's twice serving underage customers, serving intoxicated patrons, and permitting a drug transaction to occur on the premises. She did not, however, indicate whether one of these grounds, or which combination of less than all of these grounds, would constitute good cause. Therefore, the matter must be remanded for further consideration.

The order is affirmed as to the findings of serving underage customers and intoxicated patrons and is otherwise reversed, and the case is remanded to the district court with orders to remand to the director for further proceedings consistent with the views expressed in this opinion.

Judge BOORAS and Judge KAPELKE * concur.