23CA0105 Peo v Lovato 08-07-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0105
Adams County District Court No. 19CR731
Honorable Thomas R. Ensor, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Daniel Lovato,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

T. Marshal Seufert, Alternate Defense Counsel, Boulder, Colorado, for Defendant-Appellant

¶ 1       Defendant, David Daniel Lovato, appeals the judgment of conviction entered on jury verdicts finding him guilty of felony menacing, third degree assault, and driving while ability impaired. We affirm.

## I.       Background

¶ 2       Lovato was upset with M.M., a member of his extended family. He drove to her house and, while holding a screwdriver, walked up the single flight of outdoor stairs to the front door of her apartment. He banged on the door while holding the screwdriver and threatened to kill her.

¶ 3       When Lovato walked away from the door and back down the stairs, M.M. came outside.  A scuffle ensued in which Lovato punched M.M., she hit Lovato with a baseball bat, and M.M.'s neighbor hit Lovato with a shovel.  Eventually, Lovato retreated to his car and remained there until police arrived.

¶ 4       The officer at the scene noticed that Lovato smelled like alcohol, was slurring his speech, and was unsteady on his feet. Lovato was arrested and taken to jail.  While he was being booked, he made several comments to the booking officer, including, "I

should have finished the job," and "When I get out, I'm going to kill that bitch."

¶ 5     Lovato was charged with felony menacing, third degree assault, and driving under the influence of alcohol.  The jury found him guilty of felony menacing, third degree assault, and driving while ability impaired.  He was convicted and sentenced accordingly.

¶ 6     Lovato appeals, arguing that the trial court made no fewer than seven errors that entitle him to relief, either individually or considered cumulatively.  We conclude that none of Lovato's arguments warrant relief and affirm.

## II.    Constructive Amendment

¶ 7     A constructive amendment happens when a jury instruction "changes an essential element of the charged offense and thereby alters the substance of the charging instrument." *People v. Rediger*, 2018 CO 32, ¶ 48 (quoting *People v. Rodriguez*, 914 P.2d 230, 257 (Colo. 1996)).  To qualify as a constructive amendment, the jury instruction must effectively expose a defendant to criminal liability for an offense that was not originally charged.  *People v. Pahl*, 169 P.3d 169, 177 (Colo. App. 2006).

¶ 8     Lovato argues that the jury instructions on felony menacing constructively amended that count. Reviewing de novo, *Bock v. People*, 2024 CO 61, ¶ 16 n.3, we disagree.

¶ 9     Lovato argues that the instructions constructively amended the deadly weapon element of felony menacing. The complaint alleged that Lovato committed felony menacing "by use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article was a deadly weapon." The jury instructions articulated this element in an interrogatory, but added the language italicized below:

> The menacing involved the use *or suggested use* of a deadly weapon only if . . . the defendant committed the menacing by the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article was a deadly weapon, *or by representing verbally or otherwise that he was armed with a deadly weapon.*

¶ 10    The added language in the jury instruction did not expose Lovato to additional criminal liability. It simply articulated different ways the prosecution could prove the deadly weapon element of felony menacing. It did not expand or change that element. *See Rodriguez*, 914 P.2d at 258 (finding no constructive amendment

where jury instruction articulated more ways of satisfying sexual penetration element of first degree sexual assault than complaint did). We therefore conclude that this additional language did not constitute a constructive amendment.

¶ 11     We also disagree with Lovato's argument that the jury instructions constructively amended the complaint because the complaint named M.M. as the victim of felony menacing whereas the jury instructions did not name a specific victim. As above, we do not see how this language changed an essential element of the offense in a way that exposed Lovato to possible conviction of a noncharged offense.

¶ 12     But even if we were to agree with Lovato that the absence of the named victim in the felony menacing instructions was problematic for this or another reason, any unpreserved error was not plain. *See Bock*, ¶ 14 (reviewing unpreserved constructive amendment argument for plain error). Plain error must be substantial, which means it must have so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the conviction. *See Hagos v. People*, 2012 CO 63, ¶ 14. That did not happen here.

4

¶ 13    The prosecution's closing argument made clear that M.M. was the only victim of felony menacing.  During closing argument, the prosecutor recounted the evidence that supported the felony menacing count:

> Immediately after [Lovato] gets out of his car, he starts yelling, "I'm going to kill you, you bitch."
>
> And multiple people heard that threat.  He threatened [M.M.] with something worse than serious bodily injury — with death.
>
> And [M.M.] heard those threats.  [Other witnesses] heard those threats . . . they all heard him threatening "I'm going to kill you. You're dead."

¶ 14    Based on this argument, we conclude that any error in omitting M.M. from the elemental jury instruction did not cast serious doubt on the reliability of the conviction and therefore did not constitute plain error.  *See Hagos*, ¶ 14.

### III.    Legislative Amendment

¶ 15    Lovato next argues that he is entitled to the benefit of an amendment to the felony menacing statute that took effect after his conviction.  We disagree.

¶ 16    The act containing the amendment at issue provided that it "applies to offenses committed on or after the applicable effective date of this act."  Ch. 462, sec. 803(2), 2021 Colo. Sess. Laws 3332. The act's effective date was March 1, 2022.  Sec. 803(1), 2021 Colo. Sess. Laws at 3332.  Because Lovato committed felony menacing in 2019, he was not entitled to the benefit of the act, including the amendment to the felony menacing statute.

## IV.    Sufficiency of the Evidence

¶ 17    Lovato argues that the evidence was insufficient to support his felony menacing conviction.  He concedes that a screwdriver like the one he held during the incident can be a deadly weapon.  But he argues it did not qualify as one because he was never in a position to injure M.M. with it.

¶ 18    We reject this argument because it alleges the evidence was insufficient to prove something that the prosecution did not need to prove to convict him of felony menacing.  In 2019, felony menacing required only that a defendant place or attempt to place another person in fear of imminent serious bodily injury with a deadly weapon.  § 18-3-206(1), C.R.S. 2019.  Felony menacing did not require that a defendant actually cause a victim to fear for their

safety, much less actually be in a position to injure the victim with a deadly weapon. Because the prosecution did not have to prove that Lovato was in a position to use a deadly weapon against M.M., the sufficiency of the evidence on this point does not matter.

## V. Lovato's Statements During Booking

¶ 19 Next, on various grounds, Lovato challenges the admission of the threatening statements he made while being booked. We address each challenge separately, reviewing each alleged evidentiary error for an abuse of discretion. *See People v. Dean*, 2012 COA 106, ¶ 38, *aff'd*, 2016 CO 14.

## A. CRE 404(b) Challenge

¶ 20 CRE 404(b) excludes evidence of an uncharged act whose *sole* relevance hinges on proving the defendant's bad character and asking the jury to infer that the defendant acted in conformity with that bad character in committing the charged offense. However, if there is an alternate theory of relevance that does not implicate this bad character inference, CRE 404(b) does not prohibit admitting the evidence. *See People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

¶ 21 The challenged statement Lovato made to the booking officer was, "I should have finished the job. When I get out, I'm going to

kill that bitch." As the prosecution points out, this statement was relevant to prove Lovato's intent in threatening M.M. And that relevance did not require the jury to first infer anything about Lovato's character. Instead, the statement directly revealed Lovato's intent. We therefore conclude that CRE 404(b) did not render these statements inadmissible.

## B. CRE 403 Challenge

¶ 22 To the extent that Lovato argues that the statement was separately inadmissible under CRE 403, we disagree. CRE 403 provides that relevant evidence may nevertheless be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. When assessing a CRE 403 argument, we assign to the evidence the maximum probative value and the minimum unfair prejudice. *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995).

¶ 23 The challenged booking statement was probative of Lovato's intent. Nevertheless, Lovato argues that it encouraged the jury to return a verdict on the improper bases of "bias, shock, anger, and sympathy." But he does not explain how it encouraged the jury to do this. And we do not see how it could have because the properly

admitted evidence included Lovato making very similar statements while at M.M.'s house.

### C.     Other Grounds and Other Testimony

¶ 24     In a separate section of his opening brief, Lovato argues that the court should have suppressed some of his statements to the booking officer under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966).  But Lovato does not specifically identify which statements he is challenging on this ground.  We therefore reject this contention as unsupported by substantial argument. *See People v. Relaford*, 2016 COA 99, ¶ 70 n.2 ("We do not consider bare or conclusory assertions presented without argument or development.").

¶ 25     Lovato also seeks to challenge the admission of testimony from the arresting officer, claiming that various portions of it violated one or more rules, including CRE 401, CRE 403, the hearsay rules, and Lovato's constitutional confrontation rights.  But aside from referencing the statements and simply naming the rules, he presents no additional argument.  He does not explain why the identified testimony was inadmissible under the rules.  We therefore

do not address these challenges to the arresting officer's testimony. *See Relaford*, ¶ 70 n.2.

## VI. Alleged Expert Testimony

¶ 26     Lovato argues that the arresting officer was allowed to give expert testimony — that Lovato was intoxicated — without being qualified as an expert. We review for an abuse of discretion, *Venalonzo v. People*, 2017 CO 9, ¶ 15, and disagree.

¶ 27     Lay witnesses can give opinion testimony that is (1) rationally based on their own perceptions; (2) helpful to determine a fact at issue; and (3) not based on scientific, technical, or other specialized knowledge. CRE 701. If opinion testimony is based on scientific, technical, or other specialized knowledge, it is expert testimony and the witness must be qualified as an expert before offering it. CRE 702. Under these rules, "[a] lay witness who has had sufficient opportunity to observe the demeanor and conduct of another may express an opinion [about] whether the latter was intoxicated." *Morris-Schindler, LLC v. City & Cnty. of Denver*, 251 P.3d 1076, 1083 (Colo. App. 2010).

¶ 28     Lovato challenges this portion of the arresting officer's testimony:

Prosecutor: When you first contacted the defendant, what did you know or notice? Sorry.

Officer: I had him step out of the vehicle which he was compliant with. I could smell an odor of an unknown alcoholic beverage. He had slurred speech, and he was unsteady on his feet.

Prosecutor: Have you received training on how to recognize indicators of intoxication?

Officer: Yes.

Prosecutor: What are some of those indicators?

Officer: Blood-shot watery eyes, slurry speech, unable to maintain balance, unable to use fine motor functions, reaching for things, grabbing things slurred — I think I already said slurred speech.

. . . .

Prosecutor: You mentioned that the defendant was uneasy on his feet, slurring his words, strong odor of alcohol, what did that combination indicate to you?

Officer: That he was under the influence of alcohol.

¶ 29    We recognize that this testimony could be read to imply that

the officer's assessment of Lovato's intoxication was based on the

officer's training on recognizing indicators of intoxication. But the

officer's opinion — that Lovato was intoxicated — was based on his observations that Lovato was unsteady on his feet, was slurring his words, and smelled like alcohol.  This opinion, based on these observations, is one that any lay person would and could give.  We therefore conclude that it was not expert testimony.

¶ 30    Lovato also challenges the arresting officer's testimony that he did not collect the bat and shovel used against Lovato because, in the officer's view, those items were not "used in any type crime [sic] other than self-defense."  It is unclear to us whether Lovato argues on appeal that this was impermissible expert testimony or testimony that improperly invaded the province of the jury.  Regardless, we conclude it was properly admitted.

¶ 31    Officers can testify "about the reasons they took certain investigative steps, even where this testimony touches upon prohibited subjects."  *People v. Penn*, 2016 CO 32, ¶ 32.  That is what happened here.  The officer gave the challenged testimony in response to a question about why he conducted his investigation the way he did — specifically, why he did not collect certain items as evidence.  Given this context, we conclude the testimony was properly admitted.

## VII.   Prosecutorial Misconduct

¶ 32     Lovato argues that the prosecutor engaged in numerous instances of misconduct during closing argument.  We review claims of prosecutorial misconduct using a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).  First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances.  *Id.*  Second, if the conduct was improper, we determine whether reversal is required under the applicable standard of review.  *Id.*

¶ 33     Prosecutors are afforded wide latitude in their chosen language and style in closing arguments.  *People v. McMinn*, 2013 COA 94, ¶ 60.  And we give prosecutors the benefit of the doubt when their remarks are ambiguous or inartful because arguments delivered in the heat of trial are seldom perfectly scripted.  *Id.*

¶ 34     We conclude that, considered in context, the following challenged statements were not improper because they accurately reflected the law of self-defense and were within the prosecutor's broad latitude to argue that the prosecution satisfied its burden of proof and to respond to the defense's arguments.

- "The defendant does not get to say that he acted in self-defense. It is offensive that he gets to claim self-defense because [M.M.] came out onto her porch . . . . [I]t is offensive to suggest that she was required to cower in her home . . . ."

- "If I disprove any one of these conditions [referring to the elements of self-defense], just one, self-defense doesn't apply here, and the defendant is guilty."

- "If he's the initial aggressor, no self-defense for the defendant. He is guilty. And the evidence is abundantly clear that he was the initial aggressor."

- "[Lovato] was the initial aggressor. He does not get to claim self-defense here. Don't let him claim self-defense. Hold him accountable for his actions by finding him guilty . . . ."

¶ 35    We conclude that these next challenged statements were proper comments on facts in evidence. *See People v. Jamison*, 2018 COA 121, ¶ 31 (prosecutor can comment on reasonable inferences from facts in evidence).

- "Immediately after he gets out of his car, he starts yelling, 'I'm going to kill you, you bitch.' . . . [M.M.] heard those threats. [Other people heard those threats] — they all heard him threatening 'I'm going to kill you. You're dead.'"

- "I agree that self-defense applies in this case. But the only people in this case that get to claim self-defense are [M.M.] and [her neighbor]."

- "[Upset about a family custody decision, Lovato] decides to get drunk, to drive to [M.M.]'s house, to jump out of his car, threatening to kill her, arm himself with a screwdriver, pounds on her door, still threatening to kill her. Once he's managed to lure her out of her house, he goes from the yard, up the stairs to the back of the balcony where he assaults her."

¶ 36    Lovato also seeks to challenge other statements the prosecutor made during closing argument. We decline to address these challenges because Lovato either fails to identify the specific statement he seeks to challenge, or he fails to provide a

15

nonconclusory argument for why it was improper.  *See Relaford,*
¶ 70 n.2.

¶ 37    In sum, we perceive no impropriety in the prosecutor's
challenged statements.

## VIII.  Cumulative Error

¶ 38    Lovato argues that if none of the alleged errors warrant relief
individually, their cumulative effect does.  We necessarily reject this
argument because we have identified, at most, only a single
possible error.  *See People v. Palmer,* 2018 COA 38, ¶ 27.

## IX.   Disposition

¶ 39    The judgment of conviction is affirmed.

JUDGE LIPINSKY and JUDGE LUM concur.